JONES, Justice.
This appeal is from an action seeking rescission of a coal lease and an accounting for coal already mined pursuant to the lease. We affirm in part, reverse in part (as to that portion of the decree below disallowing attorney’s fee), and remand.
This case was originally filed on January 12, 1977, in the Circuit Court of Blount County by the Appellants, Worthie C. King and Marietta King, against Appellee, Calvert & Marsh Coal Co., Inc. The action was based on a lease agreement executed between the parties on August 6,1974, and an amendment to the lease dated January 16, 1975.
Basically, the lease and the amendment gave the Coal Co. the right to mine coal on the Appellants’ land for three years in exchange for the Coal Co.’s agreement to pay a royalty of $2.50 per ton for coal mined and removed from the Appellants’ land. The agreement also provided that the Coal Co. would make an accounting on the tenth day of each month for all coal mined and removed from the Appellants’ premises during the preceding month and to pay, at that time, any royalties due. In addition to its agreement to pay a $2.50 per ton royalty for coal mined, the Coal Co. promised that, if a royalty in excess of $2.50 per ton was paid to adjoining property owners for coal *891 mined on adjoining land, the Coal Co. would pay an amount equal to the royalties paid to the adjacent owners. Furthermore, the Coal Co. promised to pay attorney’s fees in the event of any future disagreement and “. . .if the court should rule that said coal company is in default and adjudicated against said coal company.”
At the time this suit was filed, the Coal Co. had paid to Appellants approximately $25,000, which amounts represented advance royalties as agreed on by the parties. The Coal Co. had also rendered several accounts to the Appellants, but these accounts had only been rendered when the coal was actually sold.
The trial Court held a preliminary hearing on February 8, 1977, after which it was ordered, pending final hearing, that the Coal Co. had fifteen days to weigh and determine the number of tons of Appellants’ coal which had been mined, but not sold. This coal was stockpiled on property adjoining Appellants’ land. The Coal Co. was further ordered to account to Appellants at the rate of $3.00 per ton for the amount of coal stockpiled.
In conformity with the preliminary order, the Coal Co. made an accounting to Appellants for 9,500.64 tons of coal that had been stockpiled on the neighboring property. The Coal Co. paid for this coal at the rate of $3.00 per ton, paying Appellants a total of $28,501.92 for this coal.
The trial Court scheduled an ore tenus hearing and testimony was taken in April, August and September of 1977. At the hearing conflicting testimony was given concerning the amount of coal mined and the amount of royalty due on each ton of coal.
The trial Court rendered a final decree on September 20, 1977, finding that there was proof that there was some coal on adjoining property on which a royalty of $3.00 per ton had been paid and that, under the lease agreement and the amendment of January, 1975, this was the amount of royalty that should be paid to the Appellants for their coal.
The trial Court also made findings that the Coal Co. had accounted to the Appellants for 18,570.72 tons of coal mined; that this constituted all of the coal mined from Appellants’ property; that the Coal Co. had paid Appellants at the rate of $3.00 per ton for the coal mined for a total payment of $55,711.97 and that this was the only amount Appellants were entitled to receive. Furthermore, the trial Court found that the Coal Co. had not defaulted on the agreement and, therefore, Appellants were not entitled to attorney’s fees under the agreement. The trial Court found that the question of whether Appellants could rescind was moot, as the lease had expired by its own terms except for the provisions concerning reclamation required to be done in compliance with the Alabama Surface Reclamation Act of 1969.
Appellants contend that the evidence showed that 40,000 tons of coal had been mined, and that they are entitled to $3.53 per ton which they allege is the amount that had been paid to adjacent property owners for their coal. Appellants further contend that the Coal Co. had breached its lease when they failed to give monthly accounts for coal when it was actually mined and removed from Appellants’ property and, therefore, Appellants should be able to recover attorney’s fees pursuant to the lease agreement.
Before reaching Appellants’ contentions, it should be noted that this was an ore tenus hearing and this Court has a long history of cases holding that, where a trial Court makes a decree after hearing witnesses ore tenus, every presumption will be indulged in favor of the trial Court and its findings will not be disturbed unless palpably wrong. Cowden v. Hughes, 353 So.2d 505 (Ala.1977).
We have carefully reviewed the record in this case and have found that, based on the testimony of Frank Hollis, there is credible evidence to support the trial Court’s finding as to the amount of coal mined from Appellants’ property.
Mr. Hollis, a registered surveyor and employee of the Coal Co., testified that, based *892 on a survey he made of Appellants’ property and his own personal observations, 12.69 acres of coal had been mined from Appellants’ property and the average width of the coal seam was 13 inches. He further testified that Rosa Coal weighed approximately seventy-four pounds per cubic foot and his estimate was that approximately 18,775 tons of coal had been mined from Appellants’ property when calculated at the standard recoverability rate of 85%. This was compatible with the Coal Co.’s account that 18,570.72 tons of coal had been mined and this, with other evidence contained in the record, amply supports the trial Court in its finding that the Coal Co. had properly accounted for all coal mined.
Appellants also contend that, based on the January 16, 1975, amendment to the original lease agreement, they are entitled to a royalty of $3.53 per ton for the coal mined. The amendment, which is somewhat ambiguous, provides that the Coal Co. agreed that, if a royalty of over $2.50 per ton were paid for coal mined from adjacent property, then the Coal Co. would pay an amount equal to the royalty paid to adjacent property owners for their coal in lieu of the $2.50 per ton royalty agreed upon. Appellants introduced evidence of an agreement between Taylor & Son Coal Company and the First National Bank of Birmingham, who were trustees for property which adjoined Appellants’ land. This agreement provides for a $3.00 per ton royalty for all merchantable coal mined from the covered property. In addition, there is a very detailed provision providing for a percentage of gross proceeds from sales of coal that are blended with coal of a lower grade, mined from other sources. This contract also provides for a minimum guaranteed royalty of $265,000.
It is easy to understand the difficulty that a trial Judge encounters in making a finding of fact when faced with broad contract language providing for royalties to be paid on an agreement that may or may not come into existence at a future date, and which agreement, if it does come into existence, would be between third parties not before the court. Here, the trial Court was presented with such a third-party contract concerning the payment of coal royalties to an adjoining property owner, which contract was detailed in its terms for determining the amount of royalties due. Not every provision concerning royalties in this third-party agreement is applicable to the Appellants’ situation, thus compounding the trial Court’s task.
The agreement between Taylor & Son Coal Company basically provided for a royalty of $3.00 per ton for merchantable coal mined and removed from property adjoining the Appellants. We feel that the trial Judge correctly interpreted the agreement between the parties in the instant case and properly determined that $3.00 per ton was the agreed upon amount of royalty to be paid the adjacent property owner for merchantable coal, which was not blended with other coal. Therefore, we conclude that the trial Court’s finding that $3.00 per ton was the proper amount of royalty to be paid to the Appellants is supported by the evidence and is not clearly and palpably wrong. Additionally, the land owners do not contest the mootness of the rescission issue.
The most difficult question before the Court in the instant case is the issue whether Appellants are entitled to attorney’s fees pursuant to their contract agreement with the Coal Co. As a general rule, when a party to a contract has been adjudicated as being in default, provisions in a contract providing for the payment of reasonable attorney’s fees will be upheld. At first blush it would appear that the trial Court, in its final decree, absolved the Coal Co. of any legal obligation to pay attorney’s fees by its failure to adjudicate a default. But this overlooks the trial Court’s earlier interlocutory decree requiring the Coal Co. to make prompt accounting and payment for coal mined and removed from Appellants’ property as agreed upon in the contract. The “no default” holding of the final decree necessarily speaks to the faithful performance of the contract terms in compliance with the Court’s interlocutory order.
In Kennedy v. Sorsby, 209 Ala. 188, 95 So. 891 (1923), this Court stated:
*893 “We fully recognize that provisions for attorneys’ fees in contracts of this character are intended for indemnity, and not intended to secure the payment of a fee for unnecessary services or for services rendered necessary by the sole or contributing wrong of the other party . and that such employment of an attorney must be in good faith and for the purposes provided by the contract.” (Emphasis added, cited cases omitted.)
The Court went on to hold in the Kennedy case:
“We are of the opinion that the employment of counsel by Mrs. Sorsby under the facts here presented was entirely in good faith, and rendered necessary for the protection of her interest and the enforcement of the provisions of her contract on account of repeated defaults of complainant, . . . .” (Emphasis added.)
Stated alternatively, the “good faith” test of Kennedy is a two-pronged test of reasonableness. The Court must decide: (1) Whether the party claiming the right to attorney’s fees, pursuant to a contract, acted reasonably in employing counsel; and, (2) Were the services, for which attorney’s fees are claimed, reasonable under the circumstances. These reasonableness findings, as a requisite to the “good faith” test, are rendered moot, of course, absent an adjudication of default by the party against whom attorney’s fees are sought.
In the instant case, it is inherent in the trial Court’s interlocutory order that the Coal Co. has not performed according to the agreed upon terms to make an accounting and royalty payment by the tenth day of the month for coal mined and removed from Appellants’ property in any preceding month. The Coal Co. contends that, as a matter of custom and usage in the coal trade, royalties were not paid until coal was actually sold and that the coal lease in this case should be construed accordingly. In German-American Insurance Co. v. Commercial Fire Insurance, 95 Ala. 469, 11 So. 117 (1891), the plaintiff insurance company attempted to show, against an Alabama insurer on its contract of reinsurance, that it was universal usage or custom of the business of insurance in the city of New York that a block of stores under the same management, containing the same goods, were considered as separate buildings or risks. (Emphasis in the original.)
The German-American Insurance Co. Court held that the burden was on the plaintiff to prove not only that the custom or usage was established in the trade at the time of the contract, but, also, that the defendant had knowledge of such usage and was therefore to be held to have contracted with reference to it. In that case, the Court found that there was no evidence that the Alabama defendant had such knowledge and that a presumption of knowledge does not arise from the generality of the custom in New York City.
In the present case, the Coal Co. seeks to construe an unambiguous provision, as to when accounting and payment are due, in accordance with what they allege is a custom in the coal mining industry. Appellants here are property owners, not members of the coal mining trade. There has been no showing that Appellants had actual knowledge of any such custom in the coal trade. Certainly, based on the holding of German-American Insurance Co., there can be no presumption of knowledge attributed to Appellants concerning custom or usage in a trade of which they are not members.
It is this Court’s opinion that, based on the foregoing, the Appellants are entitled to recover a reasonable attorney’s fee based on the amounts paid to them ($28,-501.92) pursuant to the trial Court’s interlocutory order.
On remand of this cause, we leave to the trial Court’s discretion whether further proceedings are necessary for the limited purpose of fixing a reasonable attorney’s fee.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
TORBERT, C. J., and SHORES and BEATTY, JJ., concur.
MADDOX, J., concurs in the result.