**In re James MATHEWS, Debtor.**

**Bankruptcy No. 95–07148–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

March 25, 1997.

Michael Antonio, Jr., Birmingham, AL, for Debtor.

Stephen Collins, Birmingham, AL, for Colonial Mortgage Company.

## ORDER

BENJAMIN COHEN, Bankruptcy Judge.

The debtor seeks to amend his confirmed Chapter 13 plan to include two unpaid, post-petition mortgage payments. In support of the amendment, the debtor relies on the decision of the Court of Appeals for the Eleventh Circuit from *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle),* 12 F.3d 1008 (11th Cir.1994). Colonial Mortgage Company, the mortgagee, agrees that *In re Hoggle* impacts the outcome of the matters before the Court but argues that application of *In re Hoggle* prevents the debtor from modifying his Chapter 13 plan to include such payments unless the debtor demonstrates that he has had a "change in circumstances" since confirmation of his plan.

There are procedural, substantive and equitable issues before the Court. Procedurally, the timeliness of the mortgagee's pleadings is at issue. The debtor filed his *Amendment to Schedules and Motion to Modify Plan Payments* on November 1, 1996. The mortgagee did not object to the pleading within the 20 days allowed by this Court. However, On December 26, 1996, the mortgagee filed a *Motion to Lift Stay and for Permission to Foreclose Mortgage.* In that motion, filed almost two months after the debtor filed his amendment, the mortgagee complained of the exact missed payments the debtor included in his amendment. It was not until January 2, 1997, that the mortgagee formally objected to the debtor's proposed amendment with an *Objection to Motion to Modify Chapter 13 Plan.* This objection was followed the mortgagee's *Motion to Reconsider Colonial Mortgage Company's Claim,* filed on January 6, 1997, requesting this Court to reconsider an unrelated order entered on September 6, 1996. The issue is whether the mortgagee's *Objection to Motion to Modify Chapter 13 Plan* and *Motion to Reconsider Colonial Mortgage Company's Claim* were untimely.

Substantively, there are issues that relate to the debtor's amendment and the mortgagee's request for relief from the stay. Notwithstanding the resolution of the procedural issue, this Court must address the mortgagee's request for relief from the stay, which in turn necessitates consideration of the debtor's amendment and the mortgagee's objection to that amendment.[1]

Equitably, the mortgagee seeks reimbursement from the debtor for fees and expenses associated with these matters. The issue before the Court is whether, in light of all relevant circumstances, the fees and expenses were necessary and are reasonable.

On February 11, 1996, the Court held hearings on the debtor's *Amendment to Schedules and Motion to Modify Plan Payments,* the mortgagee's *Objection to Motion to Modify Chapter 13 Plan,* the mortgagee's *Motion to Lift Stay and for Permission to Foreclose Mortgage,* and the mortgagee's *Motion to Reconsider Colonial Mortgage Company's Claim.* James Mathews, the debtor; Michael Antonio, Jr., the attorney for the debtor; and Stephen Collins, the attorney for the mortgagee, appeared. The only evidence offered was the debtor's testimony and related documents. The matters were submitted on that evidence and oral arguments.

## I. Findings of Fact

Based on the evidence offered, the Court makes the following findings of fact.

The debtor purchased real property on June 30, 1978. The mortgagee holds a mortgage on that property. That mortgage is the only mortgage on the property and the balance due is approximately $14,000.00. The property has a current value of approximately $22,000.00 creating an equity of at least $8,000.00. The property is assessed for tax purposes at $19,720.00 and is the debtor's homestead. The debtor's current monthly mortgage payment is $198.89.

The debtor has worked for the USX Corporation for the last 18 years as a utility man and at the time he filed his bankruptcy case, he earned approximately $2,500.00 per

month. Of that amount the debtor testified that his net pay was approximately $1,600.00 per month. As of the date of the hearing on this matter, the debtor continued to work in his same position at the same rate of pay.

Other than the two payments missed during this bankruptcy case, in the 19 years since purchasing the property, the debtor has never failed to make a required mortgage payment and at the time he filed his bankruptcy petition there were no past due payments.

The debtor filed the instant case on November 14, 1995. Since that time he has maintained his plan payments and his mortgage payments except for failing to make his October 1996 and November 1996 mortgage payments. This failure occurred because his wife, who was working when the debtor filed his petition, left a $700.00, net-pay, per month job in October 1996. In January 1997 she obtained another job with a per month, net salary of $800.00.

When the debtor's wife left her job, she had financial problems that required the debtor's assistance. The debtor was required to make his wife's current automobile payments and to pay for repairs to that automobile.

After the debtor failed to make his October and November 1996 mortgage payments, he filed his *Amendment to Schedules and Motion to Modify Plan Payments* seeking to add the $416.00 to his Chapter 13 plan, an amount that represented two missed payments and accompanying late payment fees. At the same time, the debtor asked to increase his plan payments from $135.00 bi-weekly to $140.00 bi-weekly to pay for the increased plan amount. With his December 23, 1996 plan payment, the debtor began, and has maintained, payments of $140.00.

After filing his amendment, the debtor continued his 19–year practice, that is, he made his regular monthly mortgage payments. On November 11, 1996 the debtor mailed a U.S. Postal Money Order for $208.00 to the mortgagee (representing his December 1996 payment, as he assumed that

---

1. This may, as a practical matter, render the procedural issue, as it relates to the timeliness of the mortgagee's objection to the debtor's amendment, moot.

his October 1996 and November 1996 payments had been added to his Chapter 13 plan.) On December 31, 1996 the debtor mailed another money order for $206.85 (representing his January 1997 payment.) The debtor subsequently mailed his February 1997 payment. The mortgagee refused both the December 1996 and January 1997 payments and returned those to the debtor's attorney.[2] Sometime thereafter, the debtor received a statement from the mortgagee that his payments were four months in arrears.[3]

The debtor testified that insurance on the property is paid through an escrow account with the mortgagee, as are property taxes. Both are current.

## II. Conclusions of Law

### A. Procedural Issues

The debtor argues that the mortgagee's objection to the debtor's amendment and motion to modify and the mortgagee's motion to reconsider Colonial Mortgage Company's claim were not filed timely. The mortgagee argues that the Supreme Court of the United States decision in *Pioneer Investment Services Company v. Brunswick Associates Ltd. Partnership. et al.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) allows this Court to recognize actions that are belated because of "excusable neglect." The majority opinion in *Pioneer* sets the parameters for this Court. In that opinion Justice Byron R. White wrote:

> This leaves, of course, the Rule's requirement that the party's neglect of the bar date be "excusable." It is this requirement that we believe will deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule

9006(b)(1). With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals. Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," *we conclude that the determination is at bottom an equitable one. taking account of all relevant circumstances surrounding the party's omission.* These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith. See *[In re Pioneer Investment Services Co.,]* 943 F.2d, [673] at 677[(6th Cir.1991)].

*Id.* at 395, 113 S.Ct. at 1498 (emphasis added) (footnotes omitted).

▮ This Court has considered the mortgagee's pleadings in light of the above standards and finds that there would be no prejudice to the debtor if the pleadings are considered on their merits. This is particularly true because of the mortgagee's intervening request for relief from stay, a request that raises issues similar to those considered in reviewing an objection to a request to modify a confirmed plan. However, there are negative implications associated with consideration of these pleadings. In considering them on their merits, this Court must also consider the pleadings in light of all the relevant circumstances surrounding the pleadings. These circumstances have a profound impact on this Court's consideration of the equitable issue

**2.** The debtor's attorney held the money orders pending resolution of this matter. The debtor has not attempted to negotiate or cancel the money orders and has, since the money orders were executed, allowed the funds securing the money orders to remain on deposit. At the conclusion of the hearing on this matter, the Court instructed counsel for the mortgagee to accept the payments for these and subsequent months (including the debtor's February 1997 payment that was apparently in route at the time of the hearing on this matter) and to account for all payments until this matter was resolved.

**3.** In relation to the timeliness issue, the mortgagee admits that it did not file a timely response to the debtor's amendment. The Court's file indicates that notice of that amendment was sent to the mortgagee at its Montgomery, Alabama office, the apparent location of the bankruptcy supervisor of the company whose affidavit is attached to the mortgagee's motion for relief as Exhibit B.

of whether to allow the mortgagee to recoup its litigation costs.

## B. Substantive Issues

**1. The Debtor's *Amendment to Schedules and Motion to Modify Plan Payments;* The Mortgagee's *Objection to Motion to Modify Chapter 13 Plan;* and The Mortgagee's *Motion to Lift Stay and For Permission to Foreclose Mortgage***

Pursuant to *In re Hoggle,* the debtor seeks to modify his Chapter 13 plan to include a post-petition default of $41 6.00. As stated before, the mortgagee agrees that *In re Hoggle* impacts the outcome of the matters before the Court but argues that an application of *In re Hoggle* prevents the debtor from modifying his Chapter 13 plan, and thus allows relief from the automatic stay, because, as the mortgagee contends, *In re Hoggle* requires a debtor to demonstrate a change in circumstances. The mortgagee relies on language from *In re Hoggle* that reads:

> The legislative history accompanying § 1329 also supports our interpretation. Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation. The House Report suggests that modification is permissible where problems such as a "natural disaster, a long-term layoff, or family illness or accidents with attendant medical bills" prevent compliance with the original plan. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 125 (1977). Fueling the creation of flexible modification provision was the simple recognition that "[t]he problems which caused financial distress to begin with, . . . do not magically disappear on the filing of a peti-

tion under chapter XIII." S.Rep. No. 95–989, 95th Cong., 2d Sess. 12 (1978).

*In re Hoggle* at 1011.

This Court will not speculate on what criteria, if any, *In re Hoggle* requires this Court to consider in determining whether a mortgagee is entitled to relief from the automatic stay where a debtor fails to make a post-petition mortgage payment or when a debtor may modify a Chapter 13 plan to include post-petition mortgage arrearages in a confirmed plan. The Bankruptcy code is clear that for relief from the stay to be granted either section 362(d)(1) or section 362(d)(2) must be satisfied.[4] The opinion in *In re Hoggle* is clear that "in each instance where the debtor proposes a postconfirmation modification, a judicial inquiry should be undertaken to determine whether the proposed modification to cure a default will comport with § 1322(b)(5)'s requirements that such a cure be effected within a reasonable time and simultaneously maintain payments on the long term loan." *In re Hoggle* at 1012.[5] The relationship of these two tests is in itself a perplexing matter, but for the instant case this Court has attempted to consider them simultaneously.

■ Mr. Mathews testified that the value of his house was approximately $22,000.00. This was undisputed. The balance owed on the home is approximately $14,000.00 with no arrearages, but for the two months the debtor seeks to add to his pending bankruptcy case. Consequently, there is an uncontroverted equity of approximately $8,000.00 in the property.

■ "[I]f a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately

---

**4.** In terms of the requirements of section 362(d), *Hoggle* of course would apply only to the "adequate protection" and "cause" determinations made under section 362(d)(1) and would not apply to the "equity" and "necessity" factors of section 362(d)(2). However, a certain amount of confusion is built into the system where a satisfaction of the equity provision of section 362(d)(2) also satisfies the adequate protection provision of section 362(d)(1), but the reverse is not true.

**5.** As the appeals court did in *In re Hoggle,* this Court must consider some things more than a mere post-confirmation default when considering whether a mortgagee should be granted relief from the stay under section 362(d) when a debtor modifies a plan to include post-confirmation arrearage. Such other considerations, as this Court finds them, may include the family situation and support, mortgage payment history, the age of the existing mortgage, and the number of prior bankruptcy cases.

protected." *In re James River Assocs.*, 148 B.R. 790, 796 (E.D.Va.1992). No testimony or other proof was offered that indicates that the value of the real estate is declining. And even assuming that Mr. Mathews may miss additional post-petition mortgage payments of $198.89, significant time must pass before the accrual of interest and expenses could seriously threaten to decimate that substantial equity. Therefore, the mortgagee's financial interest in the property is adequately protected, and the mortgagee is not entitled to relief from the stay under the lack of equity provision of section 362(d)(2) or the lack of adequate protection provision of section 362(d)(1).[6] However, the mortgagee may still be entitled to relief from the stay for "cause" under section 362(d)(1).

■ If Mr. Mathews cannot cure his post-petition default within a reasonable time and

**6.** *Bowest Corp. v. Stafford (In re Stafford)*, 123 B.R. 415 (N.D.Ala.1991)(debtor would be allowed to modify confirmed chapter 13 plan to include seven month post-confirmation mortgage arrearage and mortgagee would be denied relief from the stay where there was equity in the property); *Far West Fed. Bank v. Vanasen (In re Vanasen)*, 81 B.R. 59 (D.Or.1987)(mortgagee denied relief from the stay even though the debtor had failed to make post-confirmation mortgage payments where value of property exceeded the amount due mortgagee by $20,000); *In re Bellinger*, 179 B.R. 220 (Bankr.D.Idaho 1995)(where debtor's schedules indicated that property had fair market value of $60,000 and amount due under mortgage was $40,207, including $4,855 arrearage, and creditor failed to present evidence as to property's value, debtor would be allowed to modify confirmed chapter 13 plan to include post-confirmation mortgage arrearage and mortgagee would be denied relief from the stay even though debtor was delinquent on seven pre-petition payments and six post-petition payments and debtor's failure to make post-petition mortgage payments was due to lack of fiscal restraint rather than financial hardship); *Central Bank of the South v. Thomas (In re Thomas)*, 121 B.R. 94 (Bankr.N.D.Ala.1990)(relief from stay would not be granted because of debtor's failure to make post-petition mortgage payments where principal balance of debt was $15,440.02, post-petition arrearage was $1,086.35, and there was "equity cushion" in property of at least $6,959.98); *Lomas Mortgage USA. Inc. v. Elmore (In re Elmore)*, 94 B.R. 670 (Bankr.C.D.Cal.1988)(over secured creditor was not entitled to relief from stay, despite chapter 13 debtor's failure to make 18 regular monthly mortgage payments after the confirmation, because the property was not declining in value); *In re Heath*, 79 B.R. 616 (Bankr.E.D.Pa.1987)(chapter 13 debtor's failure to make any post-petition mortgage payments, a period of almost 2 years, was not "cause" for relief from the stay where secured debt was $23,000 and value of property was $32,000); *In re McCollum*, 76 B.R. 797 (Bankr.D.Or.1987)(debtor would be allowed to modify confirmed chapter 13 plan to include nine month post-confirmation mortgage arrearage and mortgagee would be denied relief from the stay where property was worth $30,000 and debt owed to mortgagee was $16,000); *Federal Nat'l Mortgage Assoc. v. Riggins (In re Riggins)*, 21 B.R. 388 (Bankr.E.D.Pa.1982)(even though debtor had made only two mortgage payments during the ten months following the filing of her chapter 13 petition, mortgagee would be denied relief from the stay where debtor had equity cushion in the property, debtor had been left by her husband without any means of support, and debtor had been making the required payments since she had obtained employment); *Commonwealth of Pennsylvania School Employees' Retirement Fund v. Davis (In re Davis)*, 11 B.R. 680 (Bankr.E.D.Pa.1981)(debtors' failure to make plan payments for five months and failure to make post-petition mortgage payments for eight months was not, standing alone, "cause" to modify the automatic stay where failure to pay was the result of exigent personal circumstances and mortgagee offered no evidence on the issue of equity in the property and did not assert that its interest in the property was not adequately protected). *See. e.g., In re Raymond*, 99 B.R. 819 (Bankr.S.D.Ohio 1989)(creditor was not entitled to relief from stay on grounds that debtors had failed to make post-petition payments on debt owed on tractor trailer where no evidence was offered to prove that the truck was declining in value or was not being maintained and insured, no evidence was presented as to the exact number of plan payments missed or the amount of post-confirmation arrearage; failure to make post-confirmation payments under Chapter 13 plan does not ipso facto establish cause for relief from stay); *In re Brown*, 70 B.R. 10 (Bankr.S.D.Ohio 1986)(chapter 13 debtors' $8,786.74 default in making payments under plan to secured creditor on debt owed on tractor was not "cause" for granting relief from stay where debtors had paid $32,173.26 into plan, creditor's $34,000 secured claim had been reduced since confirmation by payments of $9,561.74, and tractor had value substantially in excess of remaining secured claim); *In re Durben*, 70 B.R. 14 (Bankr.S.D.Ohio 1986)(where debtor had equity in tractor and tractor had not declined in value, over secured creditor would not be granted relief from the stay even though debtor was $3,131 behind in payments due under confirmed chapter 13 plan). *Cf. In re Lipply*, 56 B.R. 524 (Bankr.N.D.Ind.1986)(chapter 11 debtors' failure to make post-petition mortgage payments was not, without more, cause warranting lifting of automatic stay where property was worth five times the amount of creditor's lien and creditor was granted prospective adequate protection payments).

at the same time make his current monthly mortgage payments as those payments become due, "cause" for relief from the stay under section 362(d)(1) may exist. *See, e.g., E.F. Hutton Mortgage Corp. v. Williams (In re Williams),* 68 B.R. 442, 443 (Bankr. M.D.Ga.1987). To decide whether there is such "cause", in terms of a debtor's attempt to modify a confirmed plan, this Court must, as instructed by the Court of Appeals for the Eleventh Circuit, "determine whether a proposed modification to cure a default will comport with § 1322(b)(5)'s requirements that such a cure be effected within a reasonable time and simultaneously maintain payments on the long term loan." *In re Hoggle,* 12 F.3d at 1012.

The debtor has worked for the USX Corporation for the last 18 years as a utility man and at the time he filed his bankruptcy case, he earned approximately $2,500.00 per month. Of that amount the debtor testified that his net pay was approximately $1,600.00 per month. As of the date of the hearing on this matter, the debtor continued to work in his same position at the same rate of pay.

The mortgagee argues that the debtor's continuity in working status and salary is the very reason that this Court should deny the amendment to the bankruptcy plan and the reason that relief from stay should be granted, that is, because there have been no "changed circumstances."

The mortgagee relies on the above quoted language from *In re Hoggle* to argue that *In re Hoggle* requires a change in circumstances to allow post-petition modification of a mortgage and that the debtor's stability does not qualify. As stated earlier, this Court will not speculate on what criteria *In re Hoggle* may require this Court to consider in addition to that discussed above, but if the mortgagee is correct, to penalize this debtor because he maintains a responsible position with a stable salary, would contradict the direct instructions of the court in *In re Hoggle* that this Court is "to determine whether the proposed modification to cure a default will comport with § 1322(b)(5)'s requirements that such a cure be effected within a reasonable time and simultaneously maintain payments on the long term loan" *In re Hoggle* at 1012. But

even still, if the mortgagee is correct that "changed circumstances" are required, this debtor meets that test without question. During the exact months the debtor failed to make two mortgage payments, his wife did not work. Not only did the debtor not have the benefit of his wife's salary, his personal expenses increased because of his wife's automobile debt payments and repair costs. To suggest that her salary and expenses should not be considered in evaluating the reasons for the debtor's failure to pay his mortgage is unreasonable.

Whether this Court considers a changed circumstances test, or any other, there is no cause for granting this mortgagee relief from the automatic stay or for denying the debtor the right to modify his plan. If this debtor's post-petition mortgage default is not one that qualifies for inclusion in a confirmed Chapter 13 plan pursuant to *In re Hoggle,* there are none that do. This debtor filed his bankruptcy case at least one year before he failed to make the two mortgage payments. His bi-weekly Chapter 13 plan payments are deducted from his salary and have been paid to the Chapter 13 trustee timely. This debtor's case does not exhibit any of the indicia of a failing Chapter 13 case. The evidence is convincing otherwise. The debtor is able to effect, "a cure ... within a reasonable time and simultaneously maintain payments on the long term loan." *In re Hoggle* at 1012. The mortgagee's financial interest in the debtor's property is adequately protected. There is approximately $8,000.00 of equity in the house. The debtor has a responsible job with a stable salary. The debtor's financial circumstances changed during the last months of 1996 but are now secure. There is consequently, no "cause" for relief from the automatic stay. There is however "cause" to allow this debtor to amend his confirmed plan.

### 2. The Mortgagee's *Motion to Reconsider Colonial Mortgage Company's Claim*

■ On December 29, 1995, the mortgagee filed a claim in this case for $13,561.97. On July 19, 1996 the debtor objected to the claim contending that the debt represented by the claim was the full balance due on the debtor's mortgage and that the debtor's in-

tent was to make direct payments to the mortgagee rather than to make those payments through the Chapter 13 Trustee. Notice was given to the mortgagee of the objection and of the scheduled hearing on the objection. A hearing was held on August 26, 1996 at which the debtor, his attorney and the assistant Chapter 13 trustee appeared. No one representing the mortgagee appeared. Based on the arguments of counsel and the pleadings, this Court found that the objection was due to be sustained and an order sustaining the objection and disallowing the claim was entered on September 6, 1996.

On January 6, 1997, the mortgagee filed a *Motion to Reconsider Colonial Mortgage Company's Claim,* a request for this Court to reconsider the September 6, 1996 order. This Court has done that and finds that the order should not be altered. The mortgagee obviously has a claim against the debtor for the balance due on the mortgage, whether the debtor pays that amount through the Chapter 13 trustee or directly to the mortgagee. The practice of this Court has been to allow debtors, as part of their plans, to make mortgage payments directly to mortgage holders. This arrangement eliminates the Chapter 13 trustee's monthly responsibility of administering these significant claims in the majority of pending cases and saves the debtors from paying the Chapter 13 trustee's approximately 3% administrative fee. This system works well. If a debtor fails to make payments, the mortgagee may, if appropriate, ask this Court for relief from the automatic stay.

### C. Equitable Issue

#### The Mortgagee's Request for Fees and Expenses

█ This Court has had at least two other occasions to consider whether a mortgagee may recoup fees and expenses occurred in connection with efforts to collect a past due mortgage debt or to protect property subject to that debt, and has held on both of occasions that the mortgagee was entitled to the fees and expenses claimed.[7] *In re Woods,* No.95–05216 (Bankr.N.D.Ala. Feb. 12, 1996); *In re Rice,* No. 96–04762 (Bankr.N.D.Ala. Jan. 21, 1997). Such holdings and the awarding of such fees and expenses are however, not automatic. Fees and expenses associated with mortgage defaults, like all fees and expenses subject to a bankruptcy court's jurisdiction, are awarded at the discretion of the bankruptcy court. In *Federal Nat'l Mortgage Ass'n v. Delaney (In re Delaney),* 534 F.2d 645 (5th Cir.1976) the Court of Appeals for the Fifth Circuit considered a bankruptcy court's jurisdiction over a state law created lien that secured payment of mortgage based attorney fees. The per curiam opinion in that case reads in part:

we hold that the bankruptcy court has jurisdiction to permit enforcement of a state-created lien securing payment of attorney's fees on a Chapter XIII debtor's property. We further hold that, in the case of a Chapter XIII proceeding and a creditor whose interest is secured by real property, the fact that such attorney's fees are incurred after the commencement of the proceeding does not prevent their recognition by the court. But the enforcement of the lien, if it exists, is committed to the court's discretion.

*Id.* at 648; *cf. Cohen v. United Am. Bank of Cent. Florida,* 83 F.3d 1347 (11th Cir.1996).

█ In exercising this discretion, a bankruptcy court considers the law of the state in which the contract was entered. The Court of Appeals for the Eleventh Circuit explains. "Federal courts apply state law when ruling on the interpretation of contractual attorney fee provisions." *Shure v. Vermont (In re Sure–Snap Corp.),* 983 F.2d 1015, 1017 (11th Cir.1993). In Alabama, state law restricts the award of such attorney fees to those allowed by statute, contract, or special equity.[8] *Hart v. Jackson,* 607 So.2d 161 (Ala.1992). In the instant case, because

---

7. In Alabama such a request for fees and expenses must be based on a statute, special equity or a contractual arrangement. See the cases discussed below. This Court must presume that the mortgagee's request is made through a contractual provision in the parties' mortgage or note securing that mortgage and this Court will address this matter based on that assumption.

8. The court presumes that neither party disputes that Alabama law applies to this matter.

**514**

there is no statute or special equity circumstances, if the mortgagee claims its fees and expenses pursuant to a contractual provision from either the parties' mortgage or note securing that mortgage as this Court assumes (see note 7 above), then the principles of Alabama law discussed below apply.[9]

■ In Alabama, courts must consider the *necessity* of the work that serves as the basis of a contractually based fee request. The Supreme Court of Alabama has for many years recognized that such mortgage based, contractual provisions are, "intended to indemnify defendants against any necessity for employing an attorney to foreclose; but ... not intended to secure the payment of a fee for unnecessary services, or services the necessity for which might be brought on by the sole or contributing wrong of defendants." *Compton v. Collins,* 197 Ala. 642, 73 So. 334, 336 (1916); *Twickenham Station, Inc. v. Beddingfield,* 404 So.2d 43 (Ala.1981).

In Alabama, to make the determination described above, courts must apply a two-prong test of good faith. The test, first described in *Kennedy v. Sorsby,* 209 Ala. 188, 95 So. 891 (1923), and consistently applied thereafter, is explained by the Supreme Court of Alabama in *King v. Calvert & Marsh Coal Co.,Inc.,* 362 So.2d 889, 893 (Ala. 1978) as:

> the "good faith" test of *Kennedy* is a two-prong test of reasonableness. The Court must decide: (1) Whether the party claiming the right to attorney's fees, pursuant to a contract, acted reasonably in employing counsel; and, (2) Were the services, for which attorney's fees are claimed, reasonable under the circumstances.

*Id.* This Court must decide then whether, under Alabama law, the work that serves as

the basis for the mortgagee's request for fees and expenses, was necessary and reasonable.[10]

■ Applying the above test to the facts of this case, this Court finds that the movant's request for fees and expenses should be denied.[11] Specifically this Court finds that the mortgagee did not act reasonably in employing its counsel to perform the work on which the instant fees were based because the work performed was either necessitated by the "contributing wrong" of the movant or, was not necessary. Had the movant exercised any discretion in this matter, it would have determined that filing the motion for relief from stay was unnecessary, not only because the time for objecting to the debtor's amendment had passed and the unpaid two monthly payments subject to the motion were due to be added to the debtor's plan, but also because the debtor had tendered the next month's payment prior to the filing of the motion.[12] Not only did the mortgagee act untimely, it acted unnecessarily.

■ When considering whether to file a motion for relief from stay, creditors must choose which cases warrant action and which do not. Creditors must not routinely file motions for relief from stay simply because a debtor has failed to make all payments timely. And creditors certainly should not file such motions with the belief, notwithstanding that such beliefs have proven to be true in almost all instances in the past, that even if the motion is denied, all fees and expenses associated with the motion will be borne by the debtor. Creditors must not suppose that all debtors will follow paths created by some debtors who have deceived creditors through delaying manipulations of the bankruptcy process. Creditors must not suppose that

9. The Court does not have the benefit of all of the parties' contracts but must assume that there is some contractual provision for awarding attorney's fees where the mortgagee is required to collect past due payments or to protect its interest in the mortgage property. If there is not, of course an award of fees and expenses would not be allowed under Alabama law.

10. Coincidentally, this is the same test the Court routinely applies in reviewing all requests for fees and expenses made pursuant to the Bankruptcy Code.

11. This Court's ruling does not of course affect the mortgagee's contractual relationship with its counsel. This Court finds only that the debtor is not liable for the requested fees and expenses.

12. The Alabama test does not consider a request for expenses but this Court finds that if the request for fees is due to be denied, the request for expenses associated with the fees is also due to be denied.

Courts will routinely approve requests for fees and expenses.

Creditors must act responsibly, not in the nonchalant manner this mortgagee approached this debtor's two month default. This mortgagee took no action when the debtor's amendment and request to modify were sent directly to the bankruptcy department of the mortgagee's company. Instead, the mortgagee treated this case as a routine case. It discovered, apparently through its standard procedures, the debtor's default and referred the matter to counsel. Its actions were robotic and taken without any regard to the debtor's amendment or the debtor's tendering of his next month's payment following his amendment.[13] Something more is required.

This Court finds that the mortgagee's actions were not reasonable and an award of a fee in support of such actions would not be reasonable.[14] Defaults that involve individuals' homes deserve more attention and respect. A creditor must exercise discretion in deciding whether to file, or at what time to file, a motion for relief from stay. Consider this debtor's history of prompt payments for 19 years. And consider that after failing to make two payments, the debtor timely tendered all subsequent payments. With the slightest review, this mortgagee should have determined that the instant case was not a case where relief from stay should have been requested at the time the pending request was made.

This debtor has acted in good faith. He has the ability to make his current mortgage payments and to cure his minimal post-confirmation default. He should be able to do so without the punitive imposition of unwarranted fees and expenses. Alabama law does not allow a party to recover fees and expenses based on a contractual relationship unless the work that is the basis of the recovery was reasonable, and neither will this Court.[15]

---

13. At the hearing on these matters, counsel for the mortgagee explained that the mortgagee did not react to the debtor's amendment until the amendment was discovered by counsel in the course of filing and prosecuting the mortgagee's motion for relief. Of course by then, time had expired for objecting to the amendment and the debtor had already tendered his December 1996 and January 1997 mortgage payments, which payments the mortgagee returned.

14. It is apparent to the Court that counsel for the movant did all that could have been done to attend to the problems created by the movant's actions. Any failure to correct those problems should not be attributed to counsel.

15. An alternative reason exists for denial of the movant's request for fees and expenses. In *Alvarado v. Walsh (In re LCO Enters., Inc.)*, 180 B.R. 567, 570–571 (9th Cir. BAP 1995), aff'd, 105 F.3d 665 (9th Cir.1997) Bankruptcy Judge Calvin Ashland, of the Bankruptcy Court for the Central District of California, explained:

Contractual Attorneys' Fee Clause

Lincoln relies upon the attorneys' fees clause in the lease agreement with LCO as a basis for charging LCO with the attorneys' fees incurred in defending the preference litigation. While it may be true that attorneys' fees are recoverable if they are linked to litigation seeking to enforce a contract, these fees were not so incurred. "(W)hile both contracts provided for attorneys' fees, this action was not one for the enforcement of the contracts." *Collingwood Grain, Inc. v. Coast Trading Company, Inc. (In re Coast Trading Company, Inc.)*, 744 F.2d 686, 693 (9th Cir.1984).

This litigation was based wholly in bankruptcy law, as preferential transfers are not avoidable outside the bankruptcy context in the same way that they can be recovered under 11 U.S.C. § 547.

[T]he applicability of the bankruptcy laws to particular contracts is not a question of enforceability of a contract but rather involves a unique, separate area of federal law. Absent bad faith or harassment, attorneys' fees are not available for the litigation of federal bankruptcy issues under a contract which provides for attorneys' fees for enforcement of the contract.

*Coast Trading*, 744 F.2d at 693. See, *In re Fulwiler*, 624 F.2d 908, 910 (9th Cir.1980) (per curiam).

Here, the litigation surrounded the recovery of LCO's payments to Lincoln. Lincoln points to *Stitt v. Williams*, 919 F.2d 516 (9th Cir. 1990) and *United States ex rel. Reed v. Callahan*, 884 F.2d 1180 (9th Cir.1989), cert. denied, 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990), for the proposition that any litigation which involves an enforceable contract necessarily is bound by that contract's attorneys' fees provisions. The flaw in Lincoln's reasoning is their failure to recognize the difference between litigation based upon the contract (Stitt & Callahan) and litigation which is not based upon the contract (Alyeska). The asserted rationale for recovery of the pre-petition payments was unique to bankruptcy. This recovery was not based upon fraud or RICO violations in the formation and administration

It is therefore **ORDERED, ADJUDGED and DECREED** that:

1. The debtor's *Amendment to Schedules* is **ALLOWED** in the amount of $416.00 and the debtor's *Motion to Modify Plan Payments* is **GRANTED**. The debtor's plan payments are increased from $135.00 bi-weekly to $140.00 bi-weekly;

2. The mortgagee's *Objection to Motion to Modify Chapter 13 Plan* is **OVERRULED**;

3. The mortgagee's *Motion to Lift Stay and for Permission to Foreclose Mortgage* is **DENIED**; and

4. The mortgagee's *Motion to Reconsider Colonial Mortgage Company's Claim* is **DENIED**.

of a partnership, as was the litigation in Stitt. This recovery was also not based upon the Miller Act, an Act which has long been held to require the application of state law. *Callahan,* 884 F.2d at 1185. Rather, this recovery was based wholly upon bankruptcy provisions. We, therefore, hold that this was not an action under the contract which gives effect to the attorneys' fees clause in the contract. (*Alvarado v. Walsh (In re LCO Enters., Inc.),* 180 B.R. 567, 570–571 (9th Cir.BAP 1995), *aff'd,* 105 F.3d 665 (9th Cir.1997)).

In the instant case, while the mortgagee's actions are technically actions designed to enforce its contract with the debtor, those actions were however, as a practical matter, solely for the purpose of seeking this Court to reverse its previous orders and to seek excuse for the movant's dilatory action. Fees and expenses that are generated for such reasons should not be allowed.