**In re FOOD ETC., L.L.C., Debtor.**

**No. 00–12259–MAM.**

United States Bankruptcy Court,
S.D. Alabama.

March 15, 2001.

Irvin Grodsky, Mobile, AL, for Debtor.

Lawrence B. Voit, Mobile, AL, for Mrs. Smith's Bakeries, Inc., et al.

## ORDER AWARDING MRS. SMITH'S BAKERIES, INC. AN ADMINISTRATIVE EXPENSE CLAIM IN THE AMOUNT OF $5,917.87

MARGARET A. MAHONEY, Chief Judge.

This matter is before the Court on the Motion of Mrs. Smith's Bakeries, Inc., Mrs. Smith's Bakeries of Pennsylvania, Inc., and Flowers Baking Co. of Fountain Inn, Inc. ("MSB") for award of an administrative expense priority claim. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is (1) granting the motion of MSB to the extent that MSB is awarded an administrative

expense claim in the amount of $5, 917.87 for fees and expenses, but postponing payment of the claim until the amount of all administrative expense claims is known so that all administrative expense claimants are paid equally and (2) denying the motion without prejudice as to lease payments due from June 9, 2000 to August 8, 2000.

## FACTS

Food Etc. ("Food") entered into an equipment lease agreement with MSB on December 7, 1999. The lease was for bakery equipment. In the event of default, it provided:

> ... Lessee shall, in any event, remain fully liable for reasonable damages as provided by law and for all costs and expenses incurred by Lessor on account of such default, including without limitation, all court costs and reasonable legal fees as well as all costs relating to the recovery, repair and storage of the Equipment.

On June 9, 2000, Food filed for relief pursuant to chapter 11 of the Bankruptcy Code. MSB claimed that Food was in default at the time it filed bankruptcy. To date, Food has not moved to assume or reject the equipment lease. On August 31, 2000, MSB filed a motion for relief from stay, or in the alternative, to require the Debtor to assume or reject the equipment lease. After a hearing held on September 29, 2000, this Court entered an order conditionally denying the motion of MSB. Pursuant to the order, Debtor was to pay by October 10, 2000, three rental payments in the amount of $2,000 each. The order further provided that Debtor had to remain current on all subsequent rent payments due under the lease and that in the event of a payment default, the automatic stay would terminate immediately if the Debtor failed to cure the default within ten

days from the time it received notice of the default.

On November 2, 2000, MSB filed a motion seeking a determination that the automatic stay had terminated pursuant to the Court's earlier order. MSB alleged that Food failed to pay the three rent payments due on October 10, 2000, and failed to timely cure the default. On November 14, 2000, this Court, after a hearing, held that Food had timely cured the default but left unresolved two other issues: (1) Did the lease payments for the 60 days following June 9, 2000 have to be paid at any time before assumption or rejection of the lease, and what was the status of the debt—unsecured claim or administrative expense? (2) Is MSB entitled to attorney's fees and costs for its efforts during the pendency of this case and if so when must those payments be made? The Food estate may be administratively insolvent. There is no money to pay current bills except proceeds of a postpetition lending. A creditor has loaned money postpetition to Food and has been given a superpriority administrative expense claim.

## LAW

■ MSB seeks: (1) immediate payment of fees and expenses of $7,232.51 as an administrative expense and (2) immediate payment of the lease payments for the period June 9, 2000 to August 8, 2000 as an administrative expense. The burden of proof by a preponderance of the evidence is on MSB. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Court will discuss the fees and expenses and the administrative rent separately below.

### A.

■ MSB seeks an administrative expense priority claim in the amount of $ 7,232.51 for fees and expenses incurred

by MSB as a result of Debtor's default. Debtor objects to an administrative expense priority status because: (1) the fees did not benefit the estate as required by § 503(b)( 1); (2) Debtor has not assumed the equipment lease and is therefore not obligated to perform the terms of the lease; and (3) the expenses incurred by MSB are not "necessary or reasonable." MSB asserts that MSB is not proceeding under § 503(b)(1), but rather under § 365(d)(10) which provides:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ..., until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court ... orders otherwise ... (italics added).

Therefore, MSB argues that the Debtor is required to pay all obligations of the lease regardless of benefit. The cases decided to date support MSB's reading of the language of § 365(d)(10). *In re Exchange Resources, Inc.,* 214 B.R. 366 (Bankr. D.Minn.1997) (fees allowed in case under similar language of § 365(d)(3)); *Winthrop Resources Corp. v. Forman Enterprises, Inc. (In re Forman Enterprises, Inc.),* 2000 WL 1849672 (Bankr.W.D.Pa.2000). The fees and expenses are obligations of Food under its lease with MSB. The Court agrees with the Exchange Resources and Winthrop Resources cases. The Court concludes that all reasonable fees and expenses incurred after August 8, 2000 are compensable.[1]

▮ What fees and expenses are "reasonable" as required by the lease? In addition to the requirement of reasonableness specified in the lease, in Alabama, courts must consider the necessity of the work that serves as the basis of a contractually based fee request. *In re Mathews,* 208 B.R. 506, 514 (Bankr.N.D.Ala.1997). A two-prong test of good faith is used to make the determination. *Id.* A court must decide: "(1) Whether the party claiming the right to attorney's fees, pursuant to a contract, acted reasonably in employing counsel; and (2) Were the services, for which attorney's fees are claimed, reasonable under the circumstances." *Id.* (citing *King v. Calvert & Marsh Coal Co., Inc.,* 362 So.2d 889, 893 (Ala.1978)). This Court must decide then whether the work that serves as the basis for MSB's request for fees and expenses was necessary and reasonable. At the November 14, 2000 hearing this Court acknowledged that Debtor's actions or lack thereof forced MSB to incur costs and expenses to deal with the matter. The circumstances justified MSB incurring fees, costs, and expenses including proceeding to a hearing. Counsel for MSB submitted itemizations for their time, services and other charges. The charges total $7,232.51. Lawrence B. Voit charged his customary billing rate of $200 per hour and submitted the following:

| | | |
|---|---|---|
| Oct. 12, 2000 | Receive and review email from B. Baldwin. Draft corresp to Judge MAM and to client re Order and default. Telecon B. Baldwin re same. Receive and review B. Baldwin's default letter. | 1.7 hours |
| Oct. 26 | Telcon B.Baldwin re lease default, trustee motion and case status. | 0.5 hours |

---

1. All of the fees and expenses were incurred after August 8, 2000.

| Oct. 30 | Receive and review corresp from R. Reynolds and fax to B. Baldwin. Telcon B. Baldwin re same and Debtor's lease payments. | 0.8 hours |
|---|---|---|
| Oct. 31 | Receive and review corresp from B. Baldwin re termination of lease. Conf. call B.Baldwin and R.Ledbetter recure payments. | 1.3 hours |
| Nov. 1 | Telecons B.Baldwin and R.Ledbetter and review fax corresp re Debtor's payment default. Draft motions, order, and corresp re same. | 3.5 hours |
| Nov. 2 | Conf. I.Grodsky re motion and expedited hearing requested. Telcons Judge MAM's office and R.Ledbetter's office re same. VM B.Baldwin re same. | 1.3 hours |
| Nov. 3 | Phone call to bankr. clerk re motion and order shortening time for hearing; review of motion for relief and motion to expedite hearing. | 0.5 hours |
| Nov. 6 | Phone call and conf. call with court re motion for expedited hearing; phone call to B.Baldwin re hearing. | 0.5 hours |
| Nov. 7 | Telecon B.Baldwin re proof and strategy for motion hearing. Receive and review various orders and pleadings and corresp to client re same. | 1.2 hours |
| Nov. 8 | Telcons B.Baldwin, I.Grodsky, and D.Hudgens re preparations for hearing and AmSouth subpoena. Telcon Teresa Cooper of Amsouth re account data. Prepare subpoena. | 2.9 hours |
| Nov. 10 | Telcon K.Bukhalter re AmSouth subpoena. Telcon I.Grodsky re trial preparation. Telcon B.Baldwin re same. Conf call B.Baldwin and R.Ledbetter re preparations for hearing. | 2.4 hours |
| Nov. 13 | Telcons R.Reynolds and M.Gardner re hearing tomorrow. Prepare for hearing. | 3.6 hours |
| | Prepare for hearing. | 2.0 hours |
| Nov. 14 | Conf with R.Ledbetter to prepare for hearing. Appearance in BR Court for hearing on motion to determine the stay has lifted. Telcon I.Grodsky re rental payments. | 3.8 hours |
| | Total Hours | 25.5 hours |

Mr. Brad A. Baldwin also charged his customary billing rate of $240 and submitted the following:

| Oct. 19, 2000 | Communicate with Rick Ledbetter regarding Food's default in payment and draft default letter to Irvin Grodsky. | .25 hours |
|---|---|---|
| Oct. 31 | Draft notice of lease termination and failure to cure payment defaults to Food Etc.; multiple conference calls with Irvin Grodsky; Rick Ledbetter and Donna McBee, and Jeanne Shingleton regarding alleged payment of $2,000 by UPS. | 1.50 hours |

| | | |
|---|---|---|
| Oct 31 | Conference calls with Rick Ledbetter and Larry Voit regarding payment issues; draft memo to Larry Voit regarding fax pertaining to the payment dispute. | .75 hours |
| Nov. 1 | Communicate (other external) with Rick Ledbetter and Larry Voit regarding $2,000 check from Food Etc. that bounced; draft memo to Messrs. Ledbetter and Voit; draft letter for Mr. Voit to send to Irvin Grodsky. | 1.00 hours |
| Nov. 8 | Conference call with Voit regarding strategy for next Tuesday's hearing; review documents regarding the dishonor of the $4,000 check from Food and delivery of the $2,000 check. | .50 hours |
| Nov. 10 | Communicate in multiple and separate conference calls with Larry Voit and Mr. Ledbetter regarding legal strategy for next week's hearing in the Food bankruptcy case; review pleadings filed by Food in response to Mrs. Smith's motion to terminate the equipment lease. | 1.25 hours |
| | Total Hours | 5.25 hours |

These hours are in contrast to Debtor's counsel's time of approximately 8 hours for these same matters.

Mr. Rickey G. Ledbetter, Vice President of Human Resources for MSB, appeared at the hearing on November 14, 2000 and testified as a witness. His testimony was necessary to MSB's case. Mr. Ledbetter submitted an affidavit detailing his expenses in connection with his appearance in court. His total expenses were in the amount of $792.51, which included costs for airline tickets from Atlanta, Georgia to Mobile, Alabama, hotel expenses, cab fares, meals, and other related items. Debtor objected to one of the meals charged because it was for November 16, 2000, two days after the hearing when Mr. Ledbetter was back in Atlanta. Counsel for MSB agreed as does this Court that the $14.64 charge for that meal was not necessary and should be subtracted from Ledbetter's total expenses.

The Court concludes, after review of the time entries, that Mr. Baldwin's and Mr. Voit's time was duplicative in part and overlapped. The Court will allow only one attorney to bill for what amounts to strategizing and conferencing. The hourly rates charged by counsel is higher than Debtor's counsel, but the rates are the attorneys' customary rates and are not unreasonable.[2] There are several calls to Robert Reynolds and Marshall Gardner and case status reviews which are also not related to MSB's motions. An additional .5 hours will be deducted for this time. The Court concludes that MSB was justified in filing the motions it did, even though it was not entirely successful in its results. Therefore, the Court disallows 5.5 hours of time of MSB's attorneys.[3]

The expenses are reasonable except the $14.64 both MSB and Food agreed should be deleted. The time and expenses which are compensable total $5,917.87.

---

2. This Court has on several occasions opined that Debtor's counsel's rate is probably too low for his expertise.

3. The Court is allowing .25 hour for Baldwin's drafting of a termination notice. The time disallowed will be figured at the higher rate of $240 per hour.

■ When should these fees and expenses be paid? MSB requests the Court to order that if Debtor fails to pay the $7,232.51 immediately, then the automatic stay shall be lifted with respect to the equipment lease. Debtor contends that even if the attorney's fees are given an administrative priority, no cause exists for requiring Debtor to pay the expense immediately in light of Debtor's current cash flow position. This issue was analyzed in *In re Microvideo Learning Systems, Inc.*, 232 B.R. 602 (Bankr.S.D.N.Y.1999) under the analogous language of § 365(d)(3). The Microvideo court noted that the statute uses the phrase "shall timely perform" and stated that the lessor should be able to move to compel payment and, absent cause shown by the debtor, the court should direct debtor to pay the claim immediately. *Id.* at 605. However, the court questioned whether in cases where the debtor is administratively insolvent Congress intended to give postpetition, pre-rejection lessors a superpriority administrative expense claim to be paid before other administrative claimants. The administrative insolvency constitutes "cause" to delay payment. The court noted there is a split in authority among the courts, but that the vast majority of courts have held that a superpriority administrative claim is not created. *Id.* An immediate payment order would raise the lessor's claim above other administrative claims and give the lessor a heightened or superpriority status.

■ Other sections of the Code that bestow superpriority status do so explicitly. See §§ 507(b); 364(c)(1); 726(b). "Congress knew how to grant super-priority status" when it wanted to. *In re Florida Lifestyle Apparel, Inc.*, 221 B.R. 897, 900 (Bankr.M.D.Fla.1997). In construing the statute it should also be noted that prior to the 1984 amendments to the Code, it was common practice, in many jurisdic-

tions, for debtors not to pay any postpetition rent until they assumed or rejected the lease and then only to the extent it benefitted the estate. *Microvideo* at 607, 608. When § 365(d)(10) was enacted, the clause "notwithstanding section 503( b)(1)" was not inserted to elevate post petition payments to superpriority status, but only to excuse them from having to wait for an administrative distribution before being paid. In addition, the Code is noticeably silent as to where a § 365(d)(10) superpriority would fall in relation to the explicit superpriority claims. *Id.* at 608. This is a real concern in this case with the already incurred superpriority debt. This Court believes it is more logical to follow the general rule that "all administrative expense creditors must be treated with absolute equality unless a creditor agrees to subordinate its claims or unless the Code specifically provides otherwise." *In re MS Freight Distribution., Inc.*, 172 B.R. 976, 980 (Bankr.W.D.Wash.1994).

Also strengthening this argument is the lease language itself. The lease does not require immediate payment of fees and expenses on demand. It states only that Lessee "shall remain fully liable for ... all costs and expenses." MSB should not be put in a better position than its contract provides.

For all of the reasons listed above, this Court agrees with the *Microvideo* case. The fees and expenses are administrative expenses but must wait for payment in an administratively insolvent estate.

B.

■ MSB also seeks an administrative expense priority claim for the unpaid rent which accrued under the equipment lease during the first 60 days after the petition date. Because the rent accrued during the first 60 days it does not fall within § 365(d)(10). Section 365(d)(10) only creates an obligation to pay lease

payments after 60 days. The purpose of § 365(d)(10) is to mandate the performance under an unexpired lease beginning at the 60th day after filing, "not to provide a 60–day 'free' period during which the debtor may use the equipment and the lessor may not even seek payment." *In re Russell Cave Co. Inc.*, 247 B.R. 656 (Bankr.E.D.Ky.2000). Therefore, MSB must look to other Code sections to establish a priority. MSB cites 11 U.S.C. § 503(b)(1). Pursuant to § 503(b)(1), MSB would be entitled to an administrative expense for "the actual, necessary costs and expenses of preserving the estate." However, in *In re Kyle Trucking, Inc.*, 239 B.R. 198 (Bankr.N.D.Ind.1999), the court found that allowing an administrative claim for defaults arising in the first 60 days postpetition "would undermine Congress's balanced solution expressed in § 365(d)(10)." [4]

■ *In re Forman Enterprises, Inc.*, 2000 WL 1849672 (Bankr.W.D.Pa.2000) (quoting *In re Kyle Trucking Inc.*, 239 B.R. 198 (Bankr.N.D.Ind.1999)). But see *In re Pan American Airways Corp.*, 245 B.R. 897 (Bankr.S.D.Fla.2000); *In re Russell Cave Co. Inc.*, 247 B.R. 656 (Bankr. E.D.Ky.2000); *In re Raymond Cossette Trucking, Inc.*, 231 B.R. 80 (Bankr.D.N.D. 1999). "Congress has compelled debtors to cure if a lease is assumed and to pay rejection damages claims if a lease is rejected." *Id.* Food has not yet rejected or assumed the equipment lease. If the lease is assumed, any default in the obligations which were to be performed during the first 60 days following the petition will have to be satisfactorily cured. If the lease is ultimately rejected, the obligations coming due during the first 60 days after the order for relief will be included in MSB's claim for damages arising from the rejection of the lease.

THEREFORE, IT IS ORDERED AND ADJUDGED:

1. The motion of Mrs. Smith Bakeries, Inc. for an administrative expense priority claim is GRANTED to the extent that MSB is awarded an administrative expense claim in the amount of $5,917.87, but the claim shall not be paid until further order of the Court or until the amount of all administrative expense claims is known so that all administrative expense claimants are paid equally.

2. The motion of Mrs. Smith Bakeries, Inc. for an administrative expense claim for the unpaid rent which accrued during the first 60 days after the petition date is DENIED without prejudice to its reconsideration upon the Debtor's assumption or rejection of the lease.

---

4. A recent case, *In re D.M. Kaye & Sons Transport, Inc.*, 2001 WL 215712 (Bankr. D.S.C.2001), held that a secured creditor does gain administrative expense status for obligations arising during the first 60 days if the elements of § 503(b)(1)(A) are met, the debtor actively bargained for the use of the collateral, and the creditor sought and received adequate protection of its interest. If the commitments of the parties arose prepetition, and the creditor merely sat back and allowed the debtor to continue to use the property then there is no administrative expense status. The conclusion of the D.M. Kaye & Sons Court is consistent with the Court's findings here. The debtor and creditor in the D.M. Kaye & Sons case essentially entered into a new agreement after the petition date. Thus, administrative expense status was appropriate in that case.