**In re REPUBLIC TECHNOLOGIES INTERNATIONAL, LLC, et al., Debtors.**

**No. 01–51117.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Sept. 27, 2001.

Richard Baumgart, Cleveland, OH, for Forsythe McArthur Associates, Inc.

Sean Malloy, Susanne Dickerson, Cleveland, OH, for Debtors.

Rebecca Kucera, Parma, OH, for Committee of Unsecured Creditors.

Jean Robertson, Cleveland, OH, for Fleet Capital Corporation.

## MEMORANDUM OF OPINION AND ORDER

MARILYN SHEA–STONUM,
Bankruptcy Judge.

### INTRODUCTION

This matter came before the Court on the "Combined Motion of Forsythe McArthur Associates, Inc. For Relief from Stay, Adequate Protection, and to Fix Time to Ratify and Adopt or Reject Executory Contract, and Other Relief," filed on July 2, 2001, the Response of Republic Technologies International, LLC, *et al.*, filed August 24, 2001, and the "Objection of Fleet Capital Corporation as Administrative Agent for Itself and the DIP Lenders," filed August 29, 2001. A hearing was held on September 6, 2001. Appearing at the hearing were Richard Baumgart, counsel for Forsythe McArthur Associates, Inc. ("Forsythe"), Sean Malloy and Susanne Dickerson, counsel for the Debtors, Rebecca Kucera, counsel for the Committee of Unsecured Creditors, and Jean Robertson, counsel for Fleet Capital Corporation ("Fleet"). The following constitutes the decision of the Court.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this district on July 30, 1984 and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334. The Court is authorized to enter final judgment in this proceeding.

### BACKGROUND

On April 2, 2001, Republic Technologies International, LLC and certain affiliates (collectively, the "Debtors"), commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered. The Debtors are continuing in possession of their property and are operating and managing their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Their businesses include 14 facilities in seven states, including their Akron, Ohio headquarters, which supply special quality steel bars and rods to automotive and industrial manufacturers such as Ford, Daimler–Crysler, Honda and Caterpillar, as well as certain first-tier automotive suppliers, including American Axle, Delphi Automotive Systems, Masotech and TRW. Debtors are the result of a series of combinations of the operations of Bar Technologies, Republic Engineered Steels and the special bar quality production facilities of USS/Kobe Steel Company. Republic Technologies International LLC, a Delaware limited liability company, was formed on August 4, 1999.

The following facts are undisputed. On October 4, 1989, Forsythe and USS/Kobe Steel Company, one of the entities which combined operations with the Debtors, entered into a Master Equipment Lease Agreement, pursuant to which USS/Kobe Steel leased data processing and computer network equipment from Forsythe. The leases were transferred and assigned to the Debtors prior to the filing of their chapter 11 cases. The lease agreement was extended by two separate Lease Extensions, each dated December 7, 2000, and commencing January 1, 2001. Under the terms of each agreement, the Debtors were to pay Forsythe the combined sum of $136,800 for each of the months of January, February, March and April, 2001. No further payments were required during the remaining terms of the agreements.

Richard Armentrout, acquisitions manager for information technology for ten years and an employee of USS/Kobe Steel (and its predecessors) and then the Debtors for 32 years, testified that he was familiar with these leases, as well as dozens of other contractual arrangements of the Debtors that deal with information technology. The first of two agreements with Forsythe, identified as Schedule AF1 with a minimum term of twelve months, required payments of $91,800.00 per month for the first four months, and no payments for months five through twelve. Armentrout testified that this lease was only for one year because the Debtors were migrating away from using this equipment, but that some of the equipment is still being used by the Debtors and replacement of that equipment at this time would cause serious disruption for the Debtors. The other agreement, identified as Schedule AF2 with a minimum term of twenty-four months, required payments of $45,000.00 per month for the first four months, and no payments for months five to twenty-four. Armentrout testified that the equipment leased under AF2 was still in use at Debtors' Lorain plant and that the Debtors could not operate without the equipment. For this, and other reasons, the equipment was leased for a two year period.

Payments on the leases were "front end loaded," calling for all the payments on both AF1 and AF2 to be paid in the first four months. That the "front end loading" was at the insistence of Forsythe, is evidenced by three e-mails, Exhibits A, B, and C, admitted as evidence on stipulation of the parties. The correspondence on the e-mails was between Denny Lannert, on behalf of Forsythe, and Richard Armentrout, on behalf of the Debtors. From the e-mails it is evident that Forsythe required that the lease payments be front loaded. In an e-mail sent to Armentrout on No-

vember 7, 2000, Lannert stated that the monthly pricing for the equipment on the two AF schedules had been an aggregate of $43,200, which was to be changed to four monthly payments of $136,800 "as soon as you have executed the renewal schedule." Exh. A. Exhibit C contains a November 28, 2000, e-mail from Lannert and Armentrout's November 29th reply. Lannert's e-mail stated that effective 1/1/2001, the rate would change to "$136,-800 per month for four months (January through April). No further rents would be due during the remaining months of the one and two year leases, respectively." Armentrout's reply stated "we accept your terms." Exh. C.

None of the four payments under either Schedule AF1 or AF2 was made, the last payment under each schedule being due on April 1, 2001. On April 2, 2001, the Debtors filed their chapter 11 petition. Forsythe has not argued and there is nothing in the record of this case that suggests that the timing of the filing was influenced by these two leases. Armentrout testified that the Debtors had made no payments prior to the bankruptcy filing because of poor business conditions and that Forsythe took no legal action during that period. Armentrout further testified that the Debtors offered to make a pro-rated payment for the month of April 2001 but that Forsythe chose to file its Motion instead of accepting payment. Forsythe did not dispute this statement.

The issues presented raise the appropriate treatment in these chapter 11 cases of $547,200.00 owing to Forsythe as of April 1, 2001, including; (1) whether the Debtors have any current payment obligation to Forsythe pursuant to § 365(d)(10); (2) whether Forsythe is entitled to Relief from the Automatic Stay, specifically, whether the Debtors do not have "equity" in Forsythe's property pursuant to

§ 362(d)(2)(A) and whether the property is not necessary to an effective reorganization pursuant to § 362(d)(2)(B); and (3) whether Forsythe's request that the Court fix a deadline prior to confirmation for the Debtors to assume or reject the contracts pursuant to § 365(d)(2) should be granted. Forsythe's payment request was based on § 365(d)(10) and § 361.

## LAW/ANALYSIS

### A. Section 365(d)(10)

■ Section 365(d)(10) states:

The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f). Accep-

tance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

On the undisputed facts of this case, no payments are due in the post-petition time frame. Nonetheless, Forsythe argues that when the Code was amended in 1994 to include § 365(d)(10), Congress intended to eliminate the burden on holders of certain leases of personal property and require that debtors comply with the requirements of the lease. Forsythe acknowledged that the Debtors have until confirmation to accept or reject a lease, and that the requirements of the lease were for pre-petition payments. However, Forsythe stated that because the original lease agreements called for monthly payments, the Court could, "based upon the equities of the case," transform the existing lease terms into the earlier lease terms requiring payments of $43,200 per month, four of which would then be pre-petition and the remainder post-petition.[1]

The Debtors, noting that the payment terms were what Forsythe required, argue that it was not the intent of the drafters of § 365(d)(10) that courts re-write contracts that were negotiated and agreed to between sophisticated parties like Forsythe and the Debtors.

---

1. Forsythe bases this interpretation of § 365(d)(10) on Colliers on Bankruptcy, ¶ 365.04[6] (15th ed.), which states in pertinent part:

The Bankruptcy Reform Act of 1994 added section 365(d)(10) to the Code. This section requires the trustee in a chapter 11 case to perform timely all the obligations of the debtor, first arising from or after 60 days after the order for relief in a chapter 11 case under an unexpired lease of personal property ... until the lease is assumed or rejected, unless the court, based upon the equities of the case, orders otherwise. The amendment expressly provides that it overrides section 503(b)(1). This is apparently intended to eliminate the

argument that accrued rent was not "actual" and "necessary" and, hence, not entitled to an administrative priority.

In oral argument Forsythe's counsel argued that this secondary source supported Forsythe's reading of § 365(d)(10) as allowing the court to take into account equitable considerations and re-write the lease terms. At best, the passage would support Forsythe's argument, raised in the hearing but not addressed in the motion, that Forsythe should be allowed an administrative claim for the post-petition use of the equipment at the prorated monthly amount, an issue not raised in this motion.

There are no cases on point which agree with, or even consider, Forsythe's reading of § 365(d)(10), and Forsythe does not identify what "equities of the case" exist that might justify the Court re-writing these leases. Forsythe is trying to win both ways. It made a calculated decision to "front end load" payments under the leases, hoping to collect all its rent in the first few months, with knowledge that the Debtors were in a business downturn. It now asks the Court to undo the deal terms on which it insisted, so that what it tried to avoid, *i.e.*, the loss of timely payments, is avoided. The Court has found no interpretation indicating that the drafters of § 365(d)(10) intended that lessors were always to have the benefit of immediate payment no matter what scheme of payment they had insisted upon prior to a bankruptcy filing. Prior to exercising any discretion that the Court may have under § 365(d)(10) to pick up a blue pencil, there would have to be a showing of special circumstances justifying the rewriting of the parties unambiguous terms. There was no such showing here. The Court denies Forsythe's request that it re-write the leases as if they reflected monthly payments to Forsythe.

### B. Relief from the Automatic Stay Pursuant to § 362.

■ Forsythe claims that it is entitled to relief from the automatic stay, asserting that the Debtors have no equity in the property pursuant to § 362(d)(2)(A) and the property is not necessary to an effective reorganization pursuant to § 362(d)(2)(B).

However, Armentrout testified that the AF2 system is crucial for the Debtors as it is used to run their Lorain plant. In addition, Armentrout testified that forcing the Debtors to replace the AF1 system at this time would cause substantial disrup-tion in their business. Forsythe did not refute this testimony. The Court finds that the property is necessary to the effective reorganization of the Debtors and denies Forsythe's request for relief from stay.

### C. Section 365(d)(2)—Fixing Time for Rejection or Acceptance

■ Forsythe further has not shown the Court that it would be prejudiced if the decision to assume or reject the leases is made in accordance with the provisions of § 365(d)(2). Section 365(d)(2) states:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unex-pired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to as-sume or reject such contract or lease.

Thus the Debtors may assume or reject an executory contract "at any time before the confirmation of a plan," which For-sythe does not dispute. In the interim, the non-debtor can require that the Debt-ors continue to perform its post-petition obligations, which may be at the same rate set forth in the contract. *See Philadel-phia Co. v. Dipple*, 312 U.S. 168, 174, 61 S.Ct. 538, 85 L.Ed. 651 (1941) (if the debt-or-in-possession elects to continue to re-ceive benefits from the other party to an executory contact pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services). How-ever, as a direct result of Forsythe's lease terms, the Debtors had no post-petition obligations.

When a request is made to determine a specified period of time to assume or re-

ject an executory contract, Courts have routinely indicated that the debtor has "a reasonable time within which to determine whether adoption or rejection of the executory contract would be beneficial to an effective reorganization." *Data–Link Sys., Inc. v. Whitcomb & Keller Mtg. Co., Inc. (In re Whitcomb & Keller Mtg. Co., Inc.),* 715 F.2d 375, 379 (7th Cir.1983). *See also, Mapco Fertilizer v. N–Ren Corp. (In re N–Ren Corp.),* 69 B.R. 85, 87 (Bankr.S.D.Ohio 1987) ("[t]he usual rule in such cases is that the court will allow a reasonable time for the debtor to assume or reject the lease or contract."); *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1216 (7th Cir.1984) ("To interpret the Code so as to minimize flexibility and rush the debtor into what may be an improvident decision does not further the purposes of the reorganization provisions."). Courts recognize that "[i]t is vitally important to all interested parties that the debtor make a prudent assumption or rejection decision, particularly a decision to assume." *In re Wheeling–Pittsburgh Steel Corp.,* 54 B.R. 385, 388 (Bankr.W.D.Pa.1985).

The initial burden rests with the movant seeking the order to compel assumption or rejection on an accelerated basis. *In re N–Ren Corp.* at 87 (denying section 365(d)(2) motion to accelerate date where movant failed to show adequate reason). In making this determination to require acceleration of assumption or rejection, courts evaluate the nature of the interests at stake, the potential harm to the parties, the potential benefits to the parties and the safeguards afforded to the parties. *Id.* at 86. Forsythe asserts that it will suffer "great and irreparable harm and damage," Motion at 4, if the Debtors continue to use its property without payment, although it does not say how, and did not argue this point at the hearing.

The Court finds that the potential harm to Forsythe in waiting for an assumption or rejection decision is no greater than to any other creditor who has negotiated a lease in this case. In a case of this complexity[2], Forsythe had a very high burden of proof to justify requiring the Debtors to consider its leases outside of a comprehensive business plan. It failed to meet any such burden. The Court denies Forsythe's request to fix a specific date upon which the Debtors must assume or reject Forsythe's lease agreements.

## D. Adequate Protection Pursuant to § 361.

Forsythe claims that it is entitled to "adequate protection" pursuant to § 361.[3] However, Forsythe itself admits that all of the lease payments were prepetition. The payment provisions of § 361 apply to post-petition payments, and none were due under the leases. "A lessor is only entitled to that amount of adequate protection which would enable him to receive the benefit of his bargain." *Wheeling* at 391. *See In re Dabney,* 45 B.R. 312, 313 (Bankr.E.D.Pa.1985) ("the adequate protection required for a lessor is the performance for which he has contracted ... Adequate protection may be provided by

**2.** The Debtors are an over a billion dollar industry and party to at least 200 executory contracts. The Debtors need time to determine which are necessary to their restructuring and which are not. These decisions are part of the larger business plan that Debtors must work to develop. This Court holds regular hearings, at least monthly, on various Motions in these cases, and the Debtors appear to be moving forward even in the face of more business uncertainty.

**3.** At the hearing, Armentrout stated that Forsythe's equipment under Schedule AF1 and AF2 is insured. Forsythe has adequate protection due to the Debtors insuring its leased property.

the lessee's compliance with the provisions of the lease."). In this case Forsythe is receiving precisely what it bargained for since the Debtors were required to pay all the lease payments pre-petition. Forsythe is not entitled to adequate protection under section 361 for pre-petition payments.

## CONCLUSION

Based upon the foregoing, Forsythe's Motion is DENIED.

**IT IS SO ORDERED.**