In re REBEL RENTS, INC., a California corporation, Perris Valley Rentals, Inc., a California corporation, Debtors.

Zions Credit Corporation, Movant,

v.

Rebel Rents, Inc., and Perris Valley Rentals, Inc., Respondents.

Nos. RS02–25442 PC, RS02–25452 PC.

United States Bankruptcy Court,
C.D. California,
Riverside Division.

March 14, 2003.

---

Jeffrey L. Shields, Esq., Callister, Nebeker & McCullough, Salt Lake City, UT, Marshall L. Brubacher, Esq., Mundell, Odlum & Haws, LLP, San Bernardino, CA, for Movant.

Paul J. Couchot, Esq., Sean A. O'Keefe, Esq., Fidel J. Orantes, Esq., Winthrop Couchot, P.C., Newport Beach, CA, for Respondents.

## MEMORANDUM DECISION

PETER H. CARROLL, Bankruptcy Judge.

Zions Credit Corporation ("Zions") filed a motion pursuant to 11 U.S.C. §§ 362 and 363 and L.B.R. 9013–1 seeking relief from the automatic stay with respect to its interest in certain construction vehicles leased to Rebel Rents, Inc. and Perris Valley Rentals, Inc. (collectively, "Debtor"). In the alternative, Zions seeks an

order (1) compelling Debtor to assume or reject the personal property leases immediately pursuant to 11 U.S.C. § 365(d)(2); (2) authorizing allowance and payment of an administrative expense claim for unpaid post-petition lease payments under 11 U.S.C. § 365(d)(10) and 11 U.S.C. § 503(b)(1)(A), and (3) allowing a superpriority claim under 11 U.S.C. § 507(b). Debtor filed a written response in opposition to the motion pursuant to L.B.R. 9013–1(a)(7)(A). At the hearing, Jeffrey L. Shields and Marshall L. Brubacher appeared on behalf of Zions, and Sean A. O'Keefe appeared for the Debtor. The court, having considered Zions' motion, Debtor's response in opposition thereto, Zions' reply, the evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law[1] pursuant to Fed.R.Civ.P. 52, as incorporated into Fed.R. Bankr.P. 7052 which is applicable to contested matters. Fed. R.Bankr.P 9014.

## I. STATEMENT OF FACTS

On November 30, 2000, Zions purchased 55 construction vehicles from Debtor for the sum of $3,801,318.60. Debtor gave Zions a Bill of Sale for the vehicles dated November 30, 2000. After the sale was consummated, Zions and Debtor executed a Master Finance Lease, Lease # 9008, dated November 30, 2000 ["Master Lease"]. Under Schedule 1 of the Master Lease dated November 30, 2000 ["Lease # 1"], Zions leased the 55 construction vehicles to Debtor for a term of 36 months. In consideration therefor, Debtor agreed to pay the total sum of $3,221,856.70 in rent under Lease # 1, payable in 36 monthly installments of $89,496.02, commencing on November 30, 2000 and ending on November 30, 2003.

On December 5, 2000, Zions purchased two 2001 Peterbilt Model 379 Trucks for the sum of $194,622.00. There is no evidence of a bill of sale between Zions and Debtor for this transaction. Under Schedule 2 of the Master Lease dated November 24, 2000 ["Lease # 2"], Zions leased the two trucks to Debtor for a term of 36 months. In consideration therefor, Debtor agreed to pay the total sum of $166,060.08 in rent under Lease # 2, payable in 36 monthly installments of $4,612.78, commencing on December 5, 2000 and ending on November 5, 2003.

On September 23, 2002, Debtor filed its voluntary petition for reorganization under chapter 11 of the Bankruptcy Code. On October 30, 2002, Debtor filed its Summary of Schedules, Schedules A through H, and Statement of Financial Affairs in this case. In Schedule G—*Executory Contracts and Unexpired Leases,* Debtor disclosed Lease # 1 and Lease # 2 with Zions as unexpired leases of personal property.[2]

---

**1.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

**2.** At the end of Schedule G, Debtor included the following disclaimer:

> . . . [T]his Statement is not an admission or recognition that any contractual relationship constitutes a lease or an 'executory

contract' nor is the characterization of a contract as a 'lease' an admission that the contract is a lease and not a security agreement. In fact, an agreement entitled 'lease' may constitute a security agreement.

Debtor included a similar disclaimer in Schedule D—*Creditors Holding Secured Claims,* which states:

> The Debtor has made no determination to date as to whether any of the contracts, termed 'leases,' in the following listings are true leases or secured financing transactions and, accordingly, reserves all rights with respect to same. The following infor-

Zions has not received a payment from Debtor on Lease # 1 or Lease # 2 since the filing of the petition. Indeed, Zions alleges that it has not received debt service on either lease for the past year. Zions seeks relief from the automatic stay for "cause" under 11 U.S.C. § 362(d)(1), due to an asserted lack of adequate protection. Zions further alleges under 11 U.S.C. § 362(d)(2), that Debtor has no equity in the vehicles, and the vehicles are not necessary for an effective reorganization. Alternatively, Zions requests an order (1) compelling Debtor to *immediately* assume or reject the personal property leases; (2) granting allowance and payment of an administrative expense claim, and (3) allowing a superpriority claim for failure of adequate protection.

Debtor opposes the motion, alleging that the Master Lease and Leases # 1 and # 2 are not true leases, but are, in fact, disguised secured transactions. Debtor states that 24 of the 57 vehicles were sold in early 2002. The sale proceeds were paid to Zions, and then deducted from the end of the leases. Debtor contends that the remaining 33 vehicles are necessary to Debtor's reorganization because "the rental of the equipment generates approximately $708,584 in average annual revenues" and "collateral rentals of other equipment which result in further revenues for the Debtors in the approximate annual amount of from [sic] $283,176 to $318,605." Debtor asserts that retention of the vehicles is essential because it would be difficult to obtain financing for replacement equipment and loss of the vehicles would result in a loss of direct and collateral revenues exceeding $1,000,000 per year. [Declaration of Shirley Dunn, p. 20, l.14–23]. Debtor argues that Zions is not entitled to relief from the automatic stay, and that adequate protection, if any, should be limited to compensation of Zions for post-petition depreciation of its collateral which Debtor has calculated at a rate of $12,000 per month. [Declaration of Shirley Dunn, p. 20, l.12–13].

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (G) and (M). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

### A. *True Lease v. Security Agreement*

■ The issue of whether Zions should be granted stay relief turns upon whether the transaction between Zions and the Debtor is a true lease or whether it is a disguised secured transaction.[3] The burden is upon the Debtor to demonstrate by a preponderance of the evidence that the Master Lease and Leases # 1 and # 2 are not what they purport to be. *See In re Murray*, 191 B.R. 309, 316 (Bankr.E.D.Pa. 1996).

mation is provided for information purposes in this Schedule as well as in Schedule G (Executory Contracts).

**3.** Zions maintains that "Debtors attack upon the Lease Agreement constitutes an attempt to challenge the validity, priority and/or extent" of Zion's interest in the vehicles and that "such attack must be brought in the context of an Adversary Proceeding." Zions' Reply, p. 8, l.5–18. Where a lessor files a motion seeking adequate protection, courts have ad-

judicated the issue of whether an alleged lease is a "true lease" or "disguised security agreement" in the context of a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure. *See, e.g., In re Triplex Marine Maint., Inc.*, 258 B.R. 659, 664 (Bankr.E.D.Tex.2000) (motion for relief from the automatic stay); *In re Edison Bros. Stores, Inc.*, 207 B.R. 801, 807 (Bankr.D.Del.1997) (motion to compel assumption or rejection of lease).

Debtor claims that it entered into the agreement with Zions "with the intention of financing the purchase of the equipment subject to the agreement and structured it as a lease to avoid characterizing the transaction as a capital acquisition." [Declaration of Shirley Dunn, p. 21, l.12–14]. Debtor argues that Zions is a finance company and that the following attributes establish that the agreement with Zions is a secured transaction:

1. Debtor's obligation to make rental and other payments is unconditional and rental payments must be paid without defense, offset, or counterclaim. Master Lease, ¶ 1;

2. Debtor bears all risk of loss or damage to the property. Master Lease, ¶ 5(i), 11;

3. Debtor must pay all charges and taxes imposed on ownership. Master Lease, ¶ 15(a)(i) (Taxes); ¶ 9 (Maintenance), ¶ 12 (Insurance);

4. Debtor must pay all rent on an accelerated basis upon default. Master Lease, ¶ 15(b)(i), and

5. Debtor waives as to Zions all implied warranties of merchantability and fitness for a particular purpose. Master Lease, ¶ 5(i).

[Declaration of Shirley Dunn, p. 21, l.15–23].

■ Whether a lease constitutes a security interest under the Bankruptcy Code depends upon whether it constitutes a security interest under applicable state or local law. *Triplex Marine Maint.*, 258 B.R. at 664; *Lamar v. Mitsubishi Motors Credit of Am., Inc. (In re Lamar)*, 249 B.R. 822, 825 (Bankr.S.D.Ga.2000). Paragraph 20 of the Master Lease states:

GOVERNING LAWS. This agreement shall be deemed to have been made and executed in UTAH regardless of the order in which the signatures of the parties shall be affixed hereto and shall be interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws of the State of UTAH except as may be provided in Section 20.

[Declaration of Norman Weldon, Ex. B, p. 21]. Therefore, the court will apply Utah law to determine the true nature of the agreement for purposes of this motion.[4]

Section 70A–1–201(37) of the Utah Code states, in pertinent part:

(b) Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:

(i) the original term of the lease is equal to or greater than the remaining economic life of the goods;

(ii) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(iii) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

(iv) the lessee has an option to become the owner of the goods for no additional consideration or nominal

---

**4.** Both Debtor and Zions agree that the issue of whether the agreement is a true lease or security agreement is controlled by Utah law. *See* Debtor's Response, p. 6, l.12–13 & p. 7, l.13–19; Zions' Reply, p. 8, n. 1.

consideration based upon compliance with the lease agreement.

(c) A transaction does not create a security interest merely because it provides that:

(i) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

(ii) the lessee assumes risk of loss of the goods, or agrees to pay taxes, Insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods;

(iii) the lessee has an option to renew the lease or to become the owner of the goods;

(iv) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(v) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

Utah Code Ann. § 70A-1-201(37) (2001). Utah revised section 70A-1-201(37) in 1990 to incorporate the amended version of U.C.C. § 1-201(37). *See Larson v. Overland Thrift & Loan,* 818 P.2d 1316, 1320 (Utah App.1991). Neither Zions nor Debtor cite any reported decisions from the courts in Utah, state or federal, applying section 70A-1-201(37) to a lease executed *after* 1990.[5]

■ Because the Utah statute is based on U.C.C. § 1-201(37), the court is guided by decisions from other jurisdictions which interpret this uniform statute. *See, e.g., Lamar,* 249 B.R. at 826 (construing Georgia's O.C.G.A. § 11-1-201(37)); *Murray,* 191 B.R. at 314 (observing that Pennsylvania's 13 Pa.C.S.A. § 1201(6) parallels I.C. § 28-1-201(37) adopted in Illinois); *In re Bumgardner,* 183 B.R. 224, 227-28 (Bankr.D.Idaho 1995) (noting that Idaho's amended statute enacting U.C.C. § 1-201(37) is substantially the same as Wash. St. 62A.1-201 (effective July 1, 1994)).

In *In re Lerch,* 147 B.R. 455 (Bankr. C.D.Ill.1992), the court analyzed Illinois's version of amended U.C.C. § 1-201(37)[6] which tracks the language of Utah Code Ann. § 70A-1-201(37). *Id.* at 460. The court observed that the revised statute focuses its inquiry on the economics of the transaction, not the intent of the parties. *Id.; see Murray,* 191 B.R. at 314. In construing the statute, the court stated:

**5.** Debtor does not cite any Utah cases in its response construing Utah Code Ann. § 70A-1-201(37). In its reply, Zions discusses *Larson v. Overland Thrift & Loan,* 818 P.2d 1316 (Utah App.1991) and *LMV Leasing, Inc. v. Conlin,* 805 P.2d 189 (Utah App.1991). However, Zions admits that the court's opinion in *LMV Leasing* is based on the pre-1990 statute. [Zions' Reply, p. 13 n. 2]. In *Larson,* the narrow issue before the court was whether an option to purchase leased equipment for fair market value under a lease financing agreement dated November 27, 1984, was indicative of a lease or a security agreement. *Lar-*

*son,* 818 P.2d at 1320. The court construed the lease financing agreement under the old law and new statute, stating that retroactive application of Utah Code Ann. § 70A-1-201(37)(b) to the 1984 lease was permissible. *Id.* at 1320 n. 3. Ultimately, the court held that the lease financing agreement was a true lease because the purchase option was not nominal and the lessor had not raised any issue with respect to the economic life of the equipment. *Id.* at 1321.

**6.** I.C. § 28-1-201(37).

The initial portion of the first sentence of the second unnumbered paragraph contains the basic direction that the determination is made based on the facts of each case. The latter portion of the first sentence of the second unnumbered paragraph starting with the word "however" creates an exception to the basic direction that the determination is made on the facts of each case, as it provides that without looking at all the facts, *a lease will be construed as a security interest if a debtor cannot terminate the lease, and if one of the four enumerated terms is present in the lease.*

Absent a mandated classification, the determination is based on the facts of the case. At this point the third unnumbered paragraph comes into effect. Focusing on the economics of the transaction, it states that a security interest is not created merely because it contains any of the five terms enumerated in [that] paragraph.

*Lerch,* 147 B.R. at 460 (emphasis added).[7] *Accord Murray,* 191 B.R. at 315; *Bumgardner,* 183 B.R. at 228; *In re Zaleha,* 159 B.R. 581, 583 (Bankr.D.Idaho 1993). To support a finding that its agreement with Zions is a security interest under section 70A–1–201(37), the Debtor must establish that it has no right to voluntarily terminate the lease *and* that one of the four provisions identified in section 70A–1–201(37)(b)(i) through (iv) is contained in the agreement between the parties.

■ In this case, there is no language in the Master Lease nor Leases # 1 or # 2 authorizing an early termination of the lease by the Debtor. Indeed, the Master Lease specifically states:

TERM RENTAL. The lease term and rental payments are specified in said Equipment Schedule. Lessee's obligation to make rental and other payments is unconditional and rental payments shall be made without defense, offset, or counterclaim. . . .

[Declaration of Norman Weldon, Ex. B, p. 21]. The consideration Debtor must pay Zions for the right of possession and use of the vehicles is a responsibility for the term of the lease which is not subject to unilateral termination by Debtor. This obligation would indicate the creation of a security interest between the parties. Nevertheless, the fact that none of the provisions described in section 70A–1–201(37)(b)(i) through (iv) can be found in either the Master Lease or Leases # 1 or # 2 supports a finding that the agreement between Debtor and Zions is a true lease.

First, the original term of Lease # 1 and the original term of Lease # 2 are *less* than the remaining economic life of the vehicles under each lease. Lease # 1 states that the 55 vehicles subject to Lease # 1 will have a residual value of $1,349,801.40 at the end of the 36–month lease term, and that figure is confirmed by the Terminal Rental Adjustment Clause ("TRAC") for Lease # 1. [Declaration of Norman Weldon, Ex. B, p. 28–30; 32]. The TRAC for Lease # 2 states that the 2 additional vehicles covered by Lease # 2 will have a residual value of $76,017.60 upon expiration of the lease term. [Declaration of Norman Weldon, Ex. B, p. 34].

Second, there is no provision in either the Master Lease nor Leases # 1 or # 2 requiring Debtor to either renew the lease for the remaining life of the vehicles or become owner of the vehicles upon expira-

---

7. I.C. § 28–1–201(37) contains unnumbered paragraphs similar to U.C.C. § 1–201(37). The Utah statute was enacted with sub-paragraphs, but the text of the Illinois and Utah statutes are identical. *Compare* I.C. § 28–1–201(37) *with* Utah Code Ann. § 70A–1–201(37)(2001).

tion of the lease term. The TRAC contained in each lease sets forth the projected residual value of the vehicles subject to the lease and states:

At the end of the Lease, the Lessor will proceed to sell or otherwise dispose of the equipment. If the net sales proceeds are less than the above projected value, the Lessee will immediately pay an amount equal to the difference as a final rent payment.

[Declaration of Norman Weldon, Ex. B, p. 32 & 34]. Each TRAC contains the maximum amount required to be paid by Debtor in the event of a deficiency upon the sale of the vehicles. The evidence indicates the vehicles are to be sold to Rush Truck Centers of California, Inc., not the Debtor, at the expiration of the respective lease terms for an amount equal to the anticipated residual value of the vehicles pursuant to a Repurchase Agreement dated November 30, 2000. [Supplemental Declaration of Norman Weldon, p. 29, 1.4 to p. 30, 1.9].

Third, neither the Master Lease nor Leases # 1 and # 2 contain an option for Debtor to renew the lease or an option permitting Debtor to purchase the vehicles for no additional consideration or nominal consideration. Paragraph 14 of the Master Lease states:

SURRENDER. Upon the expiration or termination of this Lease, Lessee shall, at its own cost and expense, deinstall, package, load, insure, and return Equipment unencumbered to Lessor at the address specified by Lessor, in the same condition as received, reasonable wear and tear excepted, except as otherwise indicated in the applicable Equipment Schedule.

[Declaration of Norman Weldon, Ex. B, p. 22]. The economic reality of the situation is that the transaction provided Debtor only with the use and possession of the vehicles which were at all times owned by Zions. Zions retained ownership of the vehicles and will have a significant residual interest in the vehicles at the end of the lease term. Debtor acknowledged Zions' ownership interest in the vehicles both when it sold the vehicles to Zions and when it signed the Master Lease. Debtor also acknowledged Zions' ownership interest when it agreed to assign the Repurchase Agreement to Zions. Debtor's use of the vehicles was defined by a set term, at the completion of which Debtor was obligated to return the vehicles to Zions. To acquire ownership, Debtor must pay fair market value for the vehicles upon expiration of the lease.[8] Debtor, whose burden it is to prove that the lease is other than what it purports to be, neither offered evidence to rebut Zions' proof of the vehicles' estimated residual value nor introduced any evidence to show that the residual values contained in the agreement are nominal. *See Murray*, 191 B.R. at 316.

Debtor relies on *Gen. Elec. Capital Corp. v. Video Update, Inc. (In re Video Update, Inc.)*, 2002 WL 1765618 (D.Del. 2002) to support its contention that the Zions' leases are disguised security agreements. In *Video Update*, the district court affirmed a bankruptcy court's ruling that

---

**8.** In its reply brief, Zions points out that:

The Lease Agreement neither requires nor forbids the sale of the vehicles to the Debtor at the end of the lease term. Under the Lease Agreement, [Zions] retains ownership of the vehicles and is free to sell them to the highest bidder at fair market value. If the Debtor is willing to purchase the vehicles from [Zions], and if the Debtor is the highest bidder for the vehicles, then the parties may, if they choose, enter into a new sales agreement after the lease term expires. Neither party, however, is required to do so.

Zions' Reply Brief, p. 18 n. 3.

an Equipment Lease Agreement between General Electric Capital Corporation, as successor in interest to CLG, Inc. ("CLG"), and Moovies, Inc. ("Moovies") was a security agreement rather than a true lease. In that case, the bankruptcy court focused on the economic life of the equipment and the expectations of the parties, concluding that CLG and Moovies intended that the "equipment would not be returned to the 'lessor,' but would remain with the 'lessee' for the duration of the economic life of the equipment." *Id.* at *5. The district court determined that this finding, coupled with the fact that CLG did not customarily engage in refurbishing, marketing and selling returned equipment, supported the bankruptcy court's conclusion that the parties did not expect the equipment to be returned to the lessor. *Id.* at *5. *Video Update* is not on point because the lease term between the parties in that case *equaled or exceeded* the economic life of the leased property. *See Pac. Express, Inc. v. Teknekron Infoswitch Corp. (In re Pac. Express, Inc.)*, 780 F.2d 1482, 1485 (9th Cir.1986) (stating that a lease term spanning the effective useful life of equipment is sign that parties intended sale rather than lease). In this case, Zions will have a significant residual interest in the vehicles because the lease term is *less* than the economic life of the vehicles.

In summary, the court finds that Debtor has not satisfied its burden of demonstrating that the Master Lease and Leases # 1 and # 2 are security agreements rather than true leases as denominated on their face. The fact that Debtor bears the risk of loss and pays taxes, maintenance and insurance on the vehicles does not, of and by itself, transform the leases into a security agreements. *See* Utah Code Ann. § 70A–1–201(37)(c)(ii)(2001); *Murray*, 191 B.R. at 316; *Bumgardner*, 183 B.R. at 230; *Lerch*, 147 B.R. at 461.

## B. Assumption or Rejection of Lease

In a case under chapter 11, a debtor in possession may assume an unexpired lease of personal property at any time prior to confirmation of a plan.[9] 11 U.S.C. § 365(a) & (d)(2). It is the policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of the petition, continuing until the confirmation of a plan, in which to assume or reject an unexpired lease. *See In re Enron Corp.*, 279 B.R. 695, 702 (Bankr.S.D.N.Y. 2002). However, the court, on request of a party to a lease, may order the debtor in possession to determine within a specified period of time whether to assume or reject.[10] 11 U.S.C. § 362(d)(2).

Zions seeks an order requiring Debtor to assume or reject the Master Lease and Leases # 1 and # 2 *immediately* pursuant to 11 U.S.C. § 365. [Zions' Memorandum of Points & Authorities, p. 9,

---

9. 11 U.S.C. § 1107(a) provides:
   Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right of compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

10. 11 U.S.C. § 365(d)(2) states:
   In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of ... personal property of the debtor at any time before confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

1.2–5]. Debtors in possession have a reasonable time to decide whether to accept or reject an unexpired lease. *Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 105 (2d Cir.1982) (holding that the bankruptcy court could shorten time to assume or reject when debtor failed to propose a plan a year after the filing of the petition and lessor was unlikely to obtain compensation for losses suffered); *In re Dunes Casino Hotel,* 63 B.R. 939, 949 (D.N.J.1986) (stating that reasonable time should be determined "consistent with the broad purpose of Chapter 11, which is 'to permit successful rehabilitation of debtors,'" *citing NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984)); *Enron Corp.,* 279 B.R. at 702 (stating that "the definition of a reasonable time should be interpreted in conjunction with the broad rehabilitative purpose of chapter 11"). What constitutes a "reasonable time" to assume or reject an unexpired personal property lease is within the discretion of the bankruptcy court based on the facts and circumstances of the case. *See Theatre Holding Corp.,* 681 F.2d at 105, *citing In re Flying W. Airways,* 328 F.Supp. 1256, 1258 (E.D.Pa.1971); *Enron Corp.,* 279 B.R. at 702; *In re Teligent,* 268 B.R. 723, 736 (Bankr.S.D.N.Y.2001).

In determining what constitutes a reasonable time, the Second Circuit in *Theatre Holding Corp.*[11] considered several factors, including:

1. The damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

2. The importance of the contract to the debtor's business and reorganization;

3. Whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan; and

4. Whether exclusivity has terminated. *Theatre Holding Corp.,* 681 F.2d at 105–06; *see In re Hernandez,* 287 B.R. 795, 806 (Bankr.D.Ariz.2002); *Enron Corp.,* 279 B.R. at 702; *Teligent,* 268 B.R. at 738–39.

■ In this case, the court finds that Debtor's unexpired leases with Zions are important to its business and reorganization in this case. Debtor presented evidence that the vehicles are necessary to its reorganization, establishing that their rental by the Debtor "generates approximately $708,584 in average annual revenues" and collateral rentals of other equipment in the approximate annual amount of "283,176 to $318,605." [Declaration of Shirley Dunn, p. 20, l. 14–19]. According to Debtor, the estate will lose both the rental revenue and associated collateral rentals without the equipment. Debtor further believes that it would be difficult to obtain replacement equipment on reasonable financing terms. [Declaration of Shirley Dunn, p. 20, l.19–23]. Zions did not offer evidence refuting this testimony in its reply.

Second, the court finds that Debtor has had sufficient time to appraise its financial situation and the value of the Zions' leases in formulating a plan. This case has been pending for six months. The court takes judicial notice of its order entered on December 18, 2002, directing the Debtor to file a disclosure statement and proposed plan of reorganization in this case on or before February 28, 2003. Although Debtor acknowledges the February 28th plan

---

**11.** Although *Theatre Holding Corp.* involved the question of what constituted a reasonable time to assume a non-residential real property lease prior to amendment of 11 U.S.C. § 365(d)(4), the *Theatre Holding Corp.* factors are relevant to the issue of what constitutes a reasonable time with respect to the assumption or rejection of unexpired leases under 11 U.S.C. § 365(d)(2). *See Enron Corp.,* 279 B.R. at 702–03; *Teligent,* 268 B.R. at 738.

deadline in its response, no disclosure statement and proposed plan have been filed by the Debtor in this case. [Debtor's Response, p. 6, 1.27 to p. 7, 1.1]. Debtor admits, however, that the Zions' leases will be valuable in formulating its plan. In its response, Debtor states that "[W]hatever the terms of Debtor's plan, ... Debtor will need the Equipment to continue generating revenues." [Debtor's Response, p. 14, 1.15–16]. Debtor further states that it is "willing and able to pay rent under the purported Leases if the Court finds them to be true leases and intends to stay current with future obligations thereunder." [Debtor's Response, p. 16, 1.17–18; p.6, 1.22–23].

Third, the court finds that Debtor's exclusivity period under 11 U.S.C. § 1121 has expired. The court takes judicial notice of its Order Re Debtors' Motion for Extension of Exclusivity Periods entered on February 14, 2003, extending the Debtor's exclusive right to file a plan under 11 U.S.C. § 1121 from January 21, 2003 to February 28, 2003. Debtor did not seek nor did the court enter an order extending the Debtor's exclusivity period beyond February 28, 2003.

Finally, Zions has not received any compensation from Debtor for the use of the vehicles since the commencement of the case. Debtor admits the vehicles have depreciated at a rate of not less than $12,000 per month since the filing of the petition. In the meantime, Debtor has declined to timely perform its obligations under the Master Lease and Leases # 1 and # 2 pursuant to 11 U.S.C. § 365(d)(10), including the payment of post-petition rents accruing 60 days from the date of bankruptcy. 11 U.S.C. § 365(d)(10). Post-petition rents are accruing under Leases # 1 and # 2 at a rate of $89,496.02 and $4,612.78 per month, respectively. Zions may suffer damage beyond the compensation available under the Bankruptcy Code if the Debtor is either unable to pay the rents that have accrued pursuant to 11 U.S.C. § 365(d)(10) or payment of such rents leaves the Debtor administratively insolvent.

Debtor has had more than enough time to formulate a plan. Debtor cannot continue to maintain its freedom to assume or reject its leases with Zions without paying for its use of the vehicles. As noted by the bankruptcy court in *Theatre Holding Corp.*, "this state of affairs allow[s] the debtor to 'have its cake and eat it too.'" *Theatre Holding Corp.*, 681 F.2d at 105. Therefore, Debtor shall, not later than 30 days from the date of entry of this memorandum opinion, file a motion to assume or reject the Master Lease and Leases # 1 and # 2 with Zions pursuant to 11 U.S.C. § 365(d)(2) and Fed.R.Bankr.P. 6006(a).

## C. Adequate Protection

Zions seeks relief from the automatic stay for "cause," arguing that its interest in the vehicles leased to Debtor is not adequately protected. [Zions' Memorandum of Points & Authorities, p. 7, 1.5–8]. Under the Bankruptcy Reform Act of 1994, Congress added sections 365(d)(10) and 363(e) to the Bankruptcy Code. Section 365(d)(10) states:

> The trustee shall timely perform all of the obligations of the debtor ... first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ..., until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obli-

gations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute a waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(10). Section 363(e) further states:

... [A]t any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

11 U.S.C. § 363(e). Courts have generally held that a lessor's adequate protection rights in the case of personal property are defined by 11 U.S.C. § 365(d)(10), *i.e.*, the payments specified under the lease. *See In re Republic Technologies Int'l, LLC,* 267 B.R. 548, 554–555 (Bankr.S.D.Ohio 2001); L. King, *Collier on Bankruptcy,* ¶ 361.02[1], at 364-4 (15th ed. Rev.2002).

■ Prior to the 1994 amendment, personal property lessors were required to petition the court to require the debtor to make lease payments to the extent the use of property actually benefitted the estate. Section 365(d)(10) was intended to relieve personal property lessors of this burden. *In re Ernst Home Center, Inc.,* 209 B.R. 955, 965 (Bankr.W.D.Wash.1997). Section 365(d)(10) is intended to give the debtor a breathing period to make an informed decision about assumption or rejection of personal property leases, while assuring the lessor that after 60 days it will receive its lease payments without having to demonstrate actual benefit to the estate. Section 363(e) makes it clear that the personal property lessor is entitled to adequate protection only, not relief from the stay. *Id.* at 965. *See* HR Rep 103–834, 103rd Cong., 2d Sess. 31 (October 4, 1994), U.S.Code Cong. & Admin.Code 1994, p. 3340 ("Section 363(e) is also amended to clarify that the lessor's interest is subject to 'adequate protection.' Such remedy is to the exclusion of the lessor's being able to seek to lift the automatic stay under section 363").

■ In this case, Debtor claims that the leased vehicles are essential to its reorganization. Debtor acknowledges that the vehicles are depreciating in value, but it has not compensated Zions for use of the vehicles since the filing of the petition. Debtor has not timely performed its obligations under the Master Lease and Leases # 1 and # 2 as required by 11 U.S.C. § 363(d)(10), despite expiration of its 60–day "breathing period" on November 22, 2002. As previously stated, Debtor cannot continue to use Zions' vehicles without compensation. Pursuant to 11 U.S.C. § 363(e), Debtor shall make the regular monthly payment of $89,496.02 due to Zions under Lease # 1, commencing April 1, 2003, and continuing regularly and monthly thereafter until assumed or rejected. Debtor shall also make the regular monthly payment of $4,612.78 due to Zions under Lease # 2, commencing April 1, 2003, and continuing regularly and monthly thereafter until assumed or rejected. Debtor is prohibited from using or leasing the vehicles described in either Leases # 1 or # 2, unless such post-petition lease payments are regularly and timely made by Debtor to Zions.

### D. *Administrative Expense Claim*

■ Zions asserts that it is entitled to an administrative expense claim pursuant

to 11 U.S.C. § 503(b), at a minimum, equal to the lease payments that are due and owing after the commencement of the case. [Zions' Memorandum of Points & Authorities, p. 9, 1.23–25]. Section 365(d)(10) contains plain and unconditional language requiring debtors in possession to promptly pay the full amount of rent due under an unexpired lease of personal property "from or after 60 days after the order for relief" pending assumption or rejection. 11 U.S.C. § 365(d)(10). As the Ninth Circuit stated in *Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401 (9th Cir.1994):

> By providing for timely performance of *all* lease obligations, "notwithstanding section 503(b)(1)," the statute has already granted priority payment status to the full amount of rent due.... The fact that a trustee does not comply with this directive before the lease is rejected cannot justify denying a lessor the priority treatment for the full amount which Congress has already bestowed upon it.

*Id.* at 404 (construing similar language in 11 U.S.C. § 365(d)(3) with respect to nonresidential real property leases). Therefore, Zions is entitled to allowance of an administrative claim for unpaid post-petition rents accruing under the Master Lease and Leases #1 and #2 from and after November 22, 2002, pursuant to 11 U.S.C. § 365(d)(10).

Zions also seeks an administrative expense priority claim for the unpaid rent which accrued under the leases during the first 60 days after the petition date, citing *In re Pan Am. Airways Corp.*, 245 B.R. 897, 900 (Bankr.S.D.Fla.2000). In *Pan American*, the court concluded that notwithstanding 11 U.S.C. § 365(d)(10), an administrative claim for rents due during the first 60 days may be allowed under 11 U.S.C. § 503(b)(1)(A) upon proof that "such rents represent the 'actual, neces-sary costs and expenses of preserving the estate.'" *Pan American*, 245 B.R. at 900.

Courts are divided on the issue of whether 11 U.S.C. § 365(d)(10) eliminates a lessor's right to apply for an administrative expense claim for the first 59 days of a case. *Compare In re Muma Servs., Inc.*, 279 B.R. 478, 490 (Bankr.D.Del.2002); *Guttman v. Xtra Lease, Inc. (In re Furley's Transp., Inc.)*, 263 B.R. 733, 740–41 (Bankr.D.Md.2001), *and In re D.M. Kaye & Sons Transp., Inc.*, 259 B.R. 114, 119 (Bankr.D.S.C.2001) (holding that nothing in § 365(d)(10) expressly precludes a lessor from asserting an administrative expense claim under § 503(b)), *with In re Kyle Trucking, Inc.*, 239 B.R. 198, 201–02 (Bankr.N.D.Ind.1999) (stating that "[I]f Congress had intended to give priority to obligations arising during the first 60 days, it would not have limited § 365(d)(10) to the obligations arising after that time").

Debtors in possession must cure any default if a lease is assumed or pay rejection damages if a lease is rejected. *In re Food Etc., L.L.C.*, 281 B.R. 82, 89 (Bankr. S.D.Ala.2001); *Winthrop Resources Corp. v. Forman Enters., Inc. (In re Forman Enters., Inc.)*, 2000 WL 1849672 (Bankr. W.D.Pa.2000). Debtor has not yet rejected or assumed the Master Lease or Leases #1 or #2. If the leases are assumed, any default in the obligations which were to be performed during the first 60 days following the petition will have to be satisfactorily cured. If the lease is ultimately rejected, the obligations accruing during the first 60 days after the order for relief will be included in Zions' claim for damages arising from rejection of the leases. *See Food, Etc.*, 281 B.R. at 89; *Kyle Trucking*, 239 B.R. at 202.

Accordingly, Zions is allowed an administrative expense claim of $465,931.22 for unpaid post-petition rents accruing under the Master Lease and Leases #1 and #2

from and after November 22, 2002, pursuant to 11 U.S.C. § 365(d)(10).[12] All administrative expense creditors must be treated with absolute equality unless a creditor agrees to subordinate its claims or unless the Bankruptcy Code specifically provides otherwise. *In re MS Freight Distrib., Inc.*, 172 B.R. 976, 980 (Bankr.W.D.Wash. 1994). Therefore, the claim shall not be paid until further order of the court or until the amount of all administrative expense claims is known so that all administrative expense claimants are paid equally. Zions' request for allowance of an administrative expense claim for unpaid rent which accrued during the first 60 days after the petition date is denied without prejudice to its reconsideration upon the Debtor's assumption or rejection of the leases.

### E. Superpriority Claim

■ Zions claims that "[T]o the extent that adequate protection to which Zions is entitled proves to be inadequate and the value of the leased vehicles declines, any claim arising therefrom is entitled to superpriority pursuant to Section 507(b)." [Zions' Memorandum of Points & Authorities, p. 8, l.6–9]. To establish a claim under Section 507(b),[13] a creditor must establish three criteria: (1) the trustee or debtor in possession must provide the creditor adequate protection under sections 362, 363 or

364; (2) the creditor must have an allowable claim under section 507(a)(1), notwithstanding the protection provided; and (3) the claim must arise from the stay of an action under section 362, the use, sale or lease of property under section 363, or the granting of a lien under section 364. *Vincent Prop., Inc. v. Five Star Partners, L.P. (In re Five Star Partners, L.P.)*, 193 B.R. 603, 608–09 (Bankr.N.D.Ga.1996). *See generally* L. King, *Collier on Bankruptcy* ¶ 507.12[1], at 507–87 (15th ed. Rev.2002).

■ A superpriority claim must be predicated upon an affirmative grant of adequate protection to a creditor. *Five Star*, 193 B.R. at 610; *In re James B. Downing & Co.*, 94 B.R. 515, 520 (Bankr. N.D.Ill.1988). In this case, Zions has not met its burden of establishing a superpriority claim under 11 U.S.C. § 507(b). It is undisputed that Debtor has not heretofore provided Zions with adequate protection of its interest in the vehicles. Because Debtor did not provide adequate protection to Zions within the meaning of section 507(b), Zions' request for a superpriority claim is denied without prejudice.

## III. CONCLUSION

For the reasons set forth above, the court finds that the Master Lease and Leases #1 and #2 are true leases, not

---

**12.** Zions' administrative expense claim under 11 U.S.C. § 365(d)(10) includes the following post-petition rents accruing after November 22, 2002:(a) Lease #1—Payments of $89,496.02 due on November 30, 2002, December 30, 2002, January 30, 2003, February 28, 2003, and March 30, 2003, totaling $447,480.10; and (b) Lease #2—Payments of $4,612.78 due on December 5, 2002, January 5, 2003, February 5, 2003, and March 5, 2003, totaling $18,451.12.

**13.** 11 U.S.C. § 507(b) states:
If a trustee, under section 362, 363, or 364 of this title, provides adequate protection of

the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection(a)(1) of this section arising from the stay of an action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

disguised secured transactions. Therefore, Debtor's obligations under the Master Lease and Leases # 1 and # 2 are subject to the requirements of 11 U.S.C. § 365.

1. Debtor shall, not later than 30 days from the date of entry of this memorandum opinion, file a motion to assume or reject the Master Lease and Leases # 1 and # 2 with Zions pursuant to 11 U.S.C. § 365(d)(2) and Fed.R.Bankr.P. 6006(a).

2. Debtor shall make the regular monthly payment of $89,496.02 due to Zions under Lease # 1, commencing April 1, 2003, and continuing regularly and monthly thereafter until assumed or rejected.

3. Debtor shall make the regular monthly payment of $4,612.78 due to Zions under Lease # 2, commencing April 1, 2003, and continuing regularly and monthly thereafter until assumed or rejected.

4. Debtor is prohibited from using or leasing the vehicles described in either Leases # 1 or # 2, unless such post-petition lease payments are regularly and timely made by Debtor to Zions.

5. Zions is allowed an administrative expense claim of $465,931.22 for unpaid post-petition rents accruing under the Master Lease and Leases # 1 and # 2 from and after November 22, 2002, pursuant to 11 U.S.C. § 365(d)(10), but the claim shall not be paid until further order of the court or until the amount of all administrative expense claims is known so that all administrative expense claimants are paid equally.

6. Zions' request for allowance of an administrative expense claim for unpaid rent which accrued during the first 60 days after the petition date is denied without prejudice to its reconsideration upon the Debtor's assumption or rejection of the leases.

7. Zions' request for a superpriority claim is denied without prejudice.

8. Zions' objections to the Declarations of Fidel Orantes and Shirley Dunn are overruled.

The court will enter a separate order consistent with this opinion.